MINNESOTA STATE BANK OF ST. PAUL v.
WILLIAM L. BATCHER AND ANOTHER.
M. F. PLUMMER, RESPONDENT.

116 N. W. (2d) 77.

June 15, 1962—No. 38,360.

*Joseph M. Donahue* and *T. Eugene Thompson,* for appellant.
*Richard J. Leonard, John L. Hannaford,* and *Doherty, Rumble
& Butler,* for respondent.

NELSON, JUSTICE.

This action involves the sale of a 1959 32-foot Holiday boat under a conditional sales contract entered into between M. F. Plummer, d.b.a. Holiday Boats, as seller, and William L. Batcher, as buyer, on October 30, 1958. The selling price was $9,270.91 and the balance payable in installments amounted to $8,473.88, which was to be paid in monthly installments of $150 each commencing December 20, 1958.

The conditional sales contract contained the following provisions:

"Said property shall remain personal property, and title shall remain in the Seller until all amounts due hereunder are paid in cash. This contract may be assigned without notice to the Purchaser and the payments hereon renewed or extended without passing title, and when assigned shall be free from any defense, counterclaim, or crosscomplaint by Purchaser.

"Purchaser agrees to keep said property at the place herein-mentioned and to keep same free from liens and encumbrances and will be responsible for and insure against its loss by fire and tornado, with companies acceptable to the Seller and shall not misuse, rent, sell, assign, secrete or lose possession of or otherwise dispose of said property or this contract without the written consent of the Seller.

"Time is the essence of this contract, and should the Purchaser fail to pay the installments or any part thereof, when due as specified, or default in any of the terms of this agreement, or should the Seller feel itself or said property, insecure, the entire unpaid balance shall at once become due and payable at the Seller's option. The Seller, his representatives, or any sheriff or other officer of the law, may take immediate possession of said property, including any equipment or accessories thereto, without notice or demand, by process of law or otherwise, and for this purpose may enter upon the premises where said property may be and remove same, whether attached to and in law become a part of the realty or not, and pursue such other remedies as may be lawful, and retain all moneys paid thereon as liquidated damages and reasonable rent for the use of said property, and Seller may, at its option, resell said property so retaken at public or private

sale at any time or place, without demand for performance and with or without notice to the Purchaser (unless required by law, in which case the mailing of notice to the Purchaser at his last known address being sufficient), and with or without having such property at the place of sale, and upon such terms and in such manner as the Seller may determine. Seller may bid at any such sale, and out of the proceeds thereof may deduct all costs and expenses incurred in retaking, repairing, and selling such property, or in enforcing any rights or remedies hereunder, including reasonable attorney's fees, and apply the residue to said indebtedness, rendering to the Purchaser the surplus, if any. In case of deficiency, the Purchaser shall pay the same to the Seller with interest at once. Purchaser waives all claims, damages, and demands against the Seller arising out of the repossession, retention and resale as aforesaid. All rights and remedies hereunder are cumulative and not alternative. Any part of this contract contrary to the laws of any state shall not invalidate other parts of the contract but shall be deemed inoperative in that state."

Attached to the contract there was an assignment whereby Plummer, the seller, assigned his interest to the Minnesota State Bank of St. Paul. The agreement read as follows:

"For value received, the undersigned does hereby sell, assign and transfer to Minnesota State Bank of Saint Paul, St. Paul, Minn., its successors or assigns, all his, its or their right, title and interest in and to the within contract and the property covered thereby *and authorizes said Minnesota State Bank of Saint Paul, St. Paul, Minn., to do every act and thing necessary to collect and discharge the same.*

"The undersigned certifies that said contract arose from the sale of the within described property, warranting that title to said property was at time of sale and is now vested in the undersigned free from all liens and encumbrances whatsoever except the within contract; that the payment stated herein to have been made on or before delivery has in fact been received in cash or its equivalent.

*"For value received the undersigned hereby guarantees payment of the within contract and agrees in the event of any default to repur-*

*chase the same upon demand for the balance then remaining unpaid thereon."* (Italics supplied.)

Payments were made in accordance with the terms of the contract until July 13, 1959, when the boat was severely damaged by fire and explosion.

The record indicates that Plummer and the officers of plaintiff bank knew that Batcher wanted to sell the salvage of the boat after the fire and apply the proceeds to reduce the unpaid balance. His attorney, Guenter S. Cohn, had indicated that he thought the salvage ought to bring $2,000. Plummer mentioned having two students in mind who he thought might pay $2,500. He indicated that he would not personally pay over $1,000. The bank officers had more than one conversation with Plummer on the matter of salvage before final action was taken. Daniel Haslerud, an officer of plaintiff bank, testified that he contacted Gordon Miller of Miller Marine to advise them that the boat was available on a salvage basis and that Batcher and his attorney were trying to sell it. Batcher's attorney thereafter gave the instruction to the bank to sell to Miller Marine for $1,500 in cash and payment of bills in excess of $200 due the St. Paul Yacht Club for fire and explosion damage. As a result, $1,500 was applied in reduction of the amount due on the conditional sales contract. Dyer J. Brogmus, another officer, wrote Batcher a letter dated December 8, 1959, advising of the salvage sale and on the same date wrote a letter to Plummer, which read as follows:

"We wish to inform you that we have sold the salvage of the 1959, thirty-two foot Holiday Houseboat owned by William L. Batcher and which contract we purchased from you with recourse for a net amount of $1500, and this amount has been applied on the Batcher contract leaving a net balance of $5,492.67 due us. You understand that this contract was purchased from you with recourse and for this reason we would suggest that you get in touch with Mr. Batcher and see that the balance of the note is retired at once. We will appreciate your closest cooperation in this connection."

A reading of the record must lead to the conclusion, we think,

that Plummer was in contact with the bank about the sale and that he had full knowledge of and acquiesced in the procedure; also that he had knowledge prior to the fire that the bank was expecting the delivery of a new substitute insurance policy by Batcher replacing one which Batcher had canceled. We think the record is clear that the bank did not initiate or approve Batcher's decision to change his insurance. He personally canceled the policy and informed the bank that he was replacing it with a policy written by another agency, which he referred to as his own insurance agency in Minneapolis.

The record indicates that plaintiff bank temporarily loaned Miller Marine the money to buy the salvage. No bill of sale was given to Miller Marine. There is no evidence that the bank at any time had or took possession of the salvage. The inference seems clear that, when informed that Batcher had accepted the offer, Miller Marine took possession of the salvage without any prior repossession being involved. By that time Plummer had knowledge of the consummation of the transaction, if not before.

The record is clear that Plummer never exercised the right of repossession which the contract provided for his protection even though he had thought about the value of the salvage on several occasions, even to the extent of informing the bank of a possible purchaser.

There is no indication that the bank ever intended in case of default to pursue any other remedy than to sue for the purchase price. Since neither Batcher nor Plummer responded to the demands made, plaintiff commenced this action against them both to recover the balance due on the conditional sales contract. No answer was interposed or appearance made on behalf of Batcher. A separate answer was filed by defendant Plummer which alleged that in the spring of 1959, with the consent of the plaintiff and without notice to him, the fire insurance on the said boat was allowed to be canceled; that thereafter the boat was seriously damaged by fire while no insurance was in effect; that the bank gained possession of the boat through a repossession and caused the same to be sold; and that plaintiff having so repossessed elected to cancel and extinguish any rights or liens it had under the contract.

The action was tried by the court without a jury and the trial court ordered judgment dismissing plaintiff's cause of action upon the ground that the plaintiff took possession of the boat on December 1, 1959, and sold the salvage thereof for the sum of $1,500, which amount was applied by the plaintiff on the unpaid balance due under the conditional sales contract, and that since the sale of the boat was made without an action having been commenced to foreclose the seller's common-law lien and without notice to Plummer, the plaintiff thereby made an election of its remedies which constituted a rescission of the contract and relieved Plummer as guarantor and caused his liability on the contract to be extinguished.

■ The trial court apparently ruled as it did upon the basis of Yellow Mfg. Acceptance Corp. v. Handler, 249 Minn. 539, 83 N. W. (2d) 103, wherein this court held that the conditional seller's repossession, summarily, of personal property, without giving notice of intention or purpose thereof to the buyer, constitutes an election of remedies by which the seller is bound and terminates the contract; that he cannot thereafter sue for the purchase price except where, upon prompt and proper notice of his intent and purpose, he retakes the property for the purpose of enforcing the seller's common-law lien in an equitable proceeding to foreclose; and that as an incident to such foreclosure proceeding, he may recover a deficiency judgment for the balance of the obligation. We said in that case (249 Minn. 543, 83 N. W. [2d] 106):

"A review of the Minnesota law on the subject of conditional sales contracts indicates that from the earliest cases up to the time of the decision in Midland Loan Finance Co. v. Osterberg, 201 Minn. 210, 275 N. W. 681, 113 A. L. R. 649, the vendor was held to an election of the following remedies: (1) He may reclaim the property; (2) he may treat the sale as absolute and sue for the debt; (3) he may bring an action to foreclose his lien. The assertion of one right was held to be an abandonment of the others. It is now the rule that a conditional seller who retakes the property which is the subject of a conditional sales contract in which title is reserved makes his election, constituting a rescission of the contract. He cannot thereafter

sue for the purchase price except where, upon prompt and proper notice of his intent and purpose, he retakes the property for the purpose of enforcing the seller's common-law lien in an equitable proceeding to foreclose the same."

It was also held in the Handler case that the conditional seller had no better rights against the guarantor than against the buyer, and, since the buyer's liability was discharged in that case by the seller's election to summarily repossess the property, the guarantor's liability was likewise discharged.

█ The record in the instant case does not support the claim of the defendant Plummer or the finding of the trial court that the plaintiff bank without notice to him repossessed the salvage of the boat so as to constitute an election of remedies and thereby to divest the plaintiff of any right to commence an action for any deficiency. We stated in the Handler case that a conditional seller who obtains possession of the chattel sold is not barred from an action of foreclosure when he serves proper notice upon the buyer that the purpose of recovery is to enable him to foreclose his seller's lien and that in such a situation no question of election presents itself, the seller having recovered possession pursuant to the remedy of foreclosure. The record here supports the conclusion that the conditional seller, in exercising his choice of remedies, did not choose either to repossess the property and retain what had been paid or to proceed to foreclose by appropriate action. The plaintiff bank chose to sue for the purchase price while at the same time retaining its seller's lien rights until fully paid.

The only question involved in this appeal is whether there was in law a repossession by the plaintiff bank. "Repossession" has been defined as "the act or state of possessing again: RECOVERY; *specif*: the act of resuming possession of property when the purchaser fails to keep up the payments on it." Webster's Third New International Dictionary (1961) p. 1926.

After the fire and explosion had damaged the boat it was only worth the price that could be obtained for the salvage. The price received may be contrasted with the probable market value of the undamaged boat, which was greatly in excess of that, as the conditional sales

contract shows. As we see it, the plaintiff, contrary to the findings of the trial court, never took actual or constructive possession of the salvage of the boat. The plaintiff merely informed Batcher through his attorney, who had first contacted the plaintiff concerning the disposition of the salvage, that an offer had been made. Batcher's attorney instructed plaintiff to accept the offer and apply the price in reduction of the amount due on the contract and advise Batcher of the balance due. We think that the following testimony of Mr. Brogmus is particularly helpful in this regard:

"Q. All right. Tell us then about the salvage.

"A. * * * Mr. Cohn called and informed us that he was commencing action against the George Martinson Agency for failure to issue the policy, and he had also garnisheed the bank account of the George S. Martinson Agency, and I believe the amount was $25,000.00. Four days later on August 21, 1959, Mr. Guenter Cohn called again and the notation here is that the boat may be sold in about ten days. He's referring to the salvage. That is about all I knew up to this point about it is that Batcher wanted to sell the salvage, and wanted to find out what the net unpaid balance would be on the loan. He never indicated at any time to us that he would not pay the loan. He wanted to sell the salvage, apply the proceeds to the loan, and so far as we know he was going to pay it in full."

It is our view that the basic question involved is whether the arrangement to sell the salvage and apply the proceeds amounted to a repossession. No testimony was introduced to show that the salvage was worth more than was paid for it, nor does the record indicate that plaintiff ever took possession either actually or constructively of the boat as was found by the trial court. It is incumbent upon Plummer to make a showing that the plaintiff contemplated a repossession. It would have to be shown that the plaintiff at some time intended to treat the salvage in a way that would exclude any right of control thereof that the defendants had or might have. Until such proof is forthcoming, it cannot be said that there has been a repossession by the plaintiff. Nowhere in the guaranty agreement is there a provision requiring any notice to be served upon Plummer. It would have been

a strange practice indeed if the plaintiff had not permitted Batcher to attempt to minimize his loss by selling the boat for the best price that could be obtained.

In Brandon v. General Motors Acceptance Corp. 223 Ark. 850, 268 S. W. (2d) 898, it was recognized that a conditional vendor can protect his interest by taking the salvage into custody, the court holding in that case that the taking did not amount to such an election of remedies as to bar a subsequent suit for the price. The rule in Arkansas appears to be identical with the rule in this state, i. e., that the vendor may (1) retake the property, with or without suit; (2) sue for the purchase price; or (3) by proper suit foreclose his equitable lien; but the election of one remedy by the seller excludes the others. The court in the Brandon case said (223 Ark. 850, 268 S. W. [2d] 898): "The holder of a Conditional Sales Contract has the right to elect, in the case of a breach, to treat the contract as canceled and repossess the property, or treat the sale as consummated and sue for the balance of the purchase price." In that case, which involved an action for the balance due on the purchase price of an automobile under a conditional sales contract, the evidence indicated that the automobile was burned beyond repair and the buyer made no effort to reclaim it from the garage in which it was stored. The court held that the evidence sustained an implied finding that the buyer had abandoned the automobile and that the contract holder took custody of it to protect the salvage value. It concluded that such taking did not constitute repossession and the holder was therefore entitled to recover the balance due on the purchase price less the salvage value.

We reach the conclusion that the order of the lower court must be reversed and the case remanded to the court below with directions to enter judgment in favor of the plaintiff for the balance due on the contract with interest, costs, and disbursements.

Reversed and remanded.