**AMERICAN INSURANCE COMPANY,**
**Plaintiff,**

v.

**D. B. DURDEN, Jr., John Adams, Watson Wharton, The First National Bank of South Carolina, and South Carolina Insurance Company, Defendants.**

**Civ. A. No. AC–1494.**

United States District Court
E. D. South Carolina,
Columbia Division.

July 20, 1965.

W. Ray Berry, of Fulmer, Barnes, Berry & Austin, Columbia, S. C., for plaintiff.

William A. Dallis, of Cooper, Gary, Nexsen & Pruet, Columbia, S. C., for defendants D. B. Durden, Jr., Watson Wharton and First National Bank of South Carolina.

Joseph L. Nettles, Columbia, S. C., for defendant South Carolina Ins. Co.

HEMPHILL, District Judge.

Declaratory Judgment action by plaintiff American Insurance Company (hereinafter referred to as "American") pursuant to 28 U.S.C. § 2201 to determine whether it has "primary" or "secondary" coverage for personal injuries and property damage resulting from an automobile accident involving its insured, D. B. Durden, Jr. Plaintiff avers that defendant South Carolina Insurance Company, insurer of the First National Bank of South Carolina, has primary coverage, with its coverage being secondary.

Stipulated facts reveal that an automobile was repossessed by defendant the First National Bank of South Carolina from a defaulting customer on September 6, 1963. Thereafter Notice of Sale was posted and the property sold at public sale on September 27, 1963, with the purchaser buying on behalf of the Bank, who immediately transferred all of his right, title, and interest therein to said Bank.[1] On Friday, October 4, 1963, defendant Durden, an employee of the Bank, with permission of an officer of the Bank, took the vehicle home with him for the weekend because of mechanical trouble with his own automobile. On Saturday night, October 5th, while defendant Dur-

1. It appears that none of the required title registration changes had been instituted with the State Highway Department in accordance with the South Carolina Act.

den was driving the car on a purely personal mission, the car was involved in a collision with a vehicle owned and operated by defendant John Adams, an uninsured motorist. Adams was charged with reckless driving.

At the time of the accident there was in effect plaintiff American's policy, which, among other things, afforded to defendant Durden coverage to pay for loss sustained by him as a result of a collision with an uninsured motorist. At the same time there was in effect a policy issued by defendant South Carolina Insurance Company to defendant, the First National Bank of South Carolina, providing liability coverage and containing an uninsured motorist endorsement.

As noted before, American does not question its coverage for damages sustained by Durden, its insured, but it avers that its coverage is secondary to that of South Carolina Insurance Company, insurer of the Bank, because the "ownership" of the automobile was in the Bank, and by virtue of the provisions of the Bank's insurance policy.

The Bank's insurer seeks to avoid any liability coverage by referring to the "Repossessed Automobiles" endorsement in its policy which provides, as an exclusion, that the endorsement "does not apply to any automobile while used for other business purposes or for personal, pleasure or family purposes." Averred is that the automobile was still under the "aura of repossession," that it was being used for "personal, pleasure or family purposes," and that it is, accordingly, not "on the risk."

The thrust of plaintiff American's contention thereabout is that the "repossession" was over when the Bank purchased the car at the sale on September 27th, and that thereafter, and at least at the time of the accident, on October 5th, the vehicle was an "owned automobile" to which the general liability phases of South Carolina Insurance Company's pol-

icy, including the uninsured motorist endorsement, attached.[2]

The first question revolves around the issue of whether or not, at the time of the collision, the vehicle was a "repossessed automobile" within the contemplation of the policy, which in material part provides that there is coverage "with respect to any automobile while being repossessed by the named insured, or while being maintained or used in connection with resale following such repossession."

When does a vehicle which has been seized by the Sheriff under Claim and Delivery and sold at a public sale cease to be a "repossessed automobile?" To ask the question is to answer it. Though the term "repossession" is not susceptible to an easy or precise definition, it has been defined, in reference to the right of the mortgagee in event of mortgagor's default, as being synonymous with "foreclosure," Snow v. Nowlin, 125 Fla. 166, 169 So. 598, 599; or the act of resuming possession of property when the purchaser fails to make the required payments. Minnesota State Bank of St. Paul v. Batcher, 263 Minn. 71, 116 N.W.2d 77, 81. In 36A C.J.S. p. 1091, it is noted that:

> The term "foreclosure" may be applied to proceedings founded upon liens other than mortgages, and in this connection is defined as meaning the institution of a suit to enforce a lien against property; the process provided for turning the lien into money; a sale in satisfaction of a lien; selling the property under the direction and in pursuance of an order of the court by an officer thereof * * *. [Footnotes omitted.]

Logically, and in view of the above authorities, it follows unmistakably that the vehicle was no longer a "repossessed automobile" after the Sheriff's sale. The fact that the Bank purchased the automobile at this public sale is irrelevant.—At

2. In its Answer, the Bank specifically denies ownership. Suppose the Bank had kept the vehicle for a year? At what time would it be suggested that "ownership" be effectuated?

the time of the accident, the vehicle in question was an owned automobile, owned by the Bank.

■ The policy issued by defendant South Carolina Insurance Company to the Bank provides:

> If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declaration bears to the total applicable limit of liability of all valid and collectible insurance against such loss * * *.

Plaintiff's, American's, policy purports to be only excess insurance because of the following language:

> However, the insurance shall be excess insurance over any other valid and collectible insurance with respect to (1) temporary substitute automobile or a non-owned automobile * * *.

Are the two above-quoted provisions in direct conflict? They are not, because in law, as with many other human institutions, things are not always what they seem.

In 8 Appleman, Insurance Law and Practice § 4914, p. 450, under the heading "Liability Coverage Generally—Primary Versus Excess Coverage" is found the following language:

> It has been held that where the owner of an automobile or truck has a policy with an omnibus clause, and the additional insured also has a non-ownership policy which provides that it shall only constitute excess coverage over and above any other valid, collectible insurance, the owner's insurer has primary liability. In such case, the liability of the excess insurer does not arise until the limits of the collectible insurance under the primary policy have been exceeded. It should be noted that under this rule the courts give no application to the other insurance clauses in the primary policy, which provides that if the additional insured has other valid and collectible insurance, he shall not be covered by the primary policy. That is because the insurance under the excess coverage policy is not regarded as other collectible insurance, as it is not available to the insured until the primary policy has been exhausted. Or, to put it another way, a non-ownership clause, with an excess coverage provision, does not constitute other valid and collectible insurance within the meaning of a primary policy with an omnibus clause.

There are no South Carolina cases which directly deal with this issue; however, the Fourth Circuit Court of Appeals has addressed itself to this issue in a case arising in this State in American Surety Co. of New York v. Canal Ins. Co., 4 Cir., 258 F.2d 934 (1958). There Judge Haynsworth, now Chief Judge, stated:

> Such excess insurance clauses serve a useful purpose in avoiding conflict. They are neither invalid nor unconscionable, and they may be given effect without invalidating a pro-rata contribution clause in the policy providing the other protection. Canal's policy here limits its liability to a proportion of the loss, based upon the relation of the policy limits, if there is other valid and collectible insurance available to the insured. That clause operates in countless situations in which the other insurance is not excess, and it is not rendered meaningless if appropriate effect is given to the excess insurance clause.

258 F.2d at 936. Note as well the excellent discussion in Citizens Mutual Auto. Ins. Co. v. Liberty Mutual Ins. Co., 273 F.2d 189 (6th Cir. 1959).

Accordingly, the Bank's insurer, South Carolina Insurance Company, has the primary exposure, and plaintiff American has secondary exposure.

Plaintiff will have Judgment consonant with its prayer. Costs will follow.

And it is so ordered.