**C & T RECREATION, INC., etc., et al., Respondents,**

**v.**

**CANNON MINNESOTA CORPORATION, etc., et al., Appellants.**

**No. C7–84–1669.**

Court of Appeals of Minnesota.

May 14, 1985.

James E. Ballenthin, Minneapolis, for appellants.

John J. Bowden, St. Paul, for respondents.

Heard, considered, and decided by WOZNIAK, P.J., and PARKER and HUSPENI, JJ.

## OPINION

WOZNIAK, Presiding Judge.

Cannon Minnesota appeals from an order denying its motion for an amended answer and counterclaim. The trial court found that Cannon had not brought the motion in good faith, finding it to be a collateral attack on the judgment sale, and assessed attorney's fees against Cannon in the amount of $1,168. C & T seeks review of its motion to strike, which was denied as moot. We affirm.

## FACTS AND BACKGROUND LITIGATION

This is the case of the haunted house. Cannon Minnesota (the principal being Chadwick R. Cannon) and C & T Recreation (C & T) were co-owners of the "Haunted Mansion" at the State Fairgrounds. In 1980, Cannon commenced an action against C & T. After lengthy negotiations, the parties settled the litigation by entering into an Agreement to Purchase Assets (Agreement) on October 15, 1980, whereby Cannon agreed to purchase C & T's interest in the Haunted Mansion.

Under the Agreement, Cannon was required to execute and deliver a stipulation of dismissal with prejudice, a promissory note in the amount of $208,220 and a security agreement covering a 50% interest in all of the assets being sold under the Agreement. Cannon refused to execute and deliver the various instruments involved on behalf of Cannon Minnesota.

The promissory note provided a six-year repayment schedule as follows:

1981—$33,320.00
1982—$35,000.00
1983—$35,000.00
1984—$35,000.00
1985—$35,000.00
1986—$35,000.00

Payments were due on the second Thursday of the State Fair in each year. Even though Mr. Cannon refused to execute the promissory note, Cannon Minnesota made the $33,320 payment in 1981. In 1982 Cannon made only a partial payment, leaving a deficiency of $10,800.

Despite repeated demands, Mr. Cannon continued to refuse to execute the various instruments called for under the Agreement. Furthermore, since August 1979, Cannon was in sole possession of the Haunted Mansion.

In 1983, C & T Recreation moved the court for an order that the lawsuit was settled and requiring Cannon Minnesota and Mr. Cannon to perform according to the terms and conditions of the Agreement. In a request for a continuance, Cannon's then attorney acknowledged in writing "I would hope that it would not even be necessary [the motion] as it appears that all you are asking for is compliance with the settle-

ment agreement [the Agreement] worked out between us."

A hearing was held and the only issue that Cannon raised was whether the promissory note should contain an acceleration clause.

The trial court delayed entry of its order for ten days to determine if the various instruments provided for in the Agreement would be delivered. They were not.

The trial court entered its order as follows:

1. That the respective plaintiffs and defendants *did settle* any and all claims arising out of the respective parties' interest in the exhibit known as the Haunted Mansion located at the Minnesota State Fairgrounds, pursuant to an Agreement dated October 15, 1980, as such claims existed as of that date.

2. That defendant C & T Recreation, Inc. may proceed to exercise its *rights* and *remedies* under the Agreement of October 15, 1980, and pursuant to the documents provided for therein.

(Emphasis added.)

### CURRENT LITIGATION

C & T then commenced an action in 1983 to collect under the promissory note which is the subject matter of this appeal. Upon motion for a partial summary judgment, the court ordered judgment in favor of C & T in the amount of $46,440 ($10,400 due on the 1982 payment and the 1983 payment), and authorized a sheriff's levy on the receipts of the Haunted Mansion for September 2 and September 3, 1983. Judgment was entered September 2, 1983, although the clerk erroneously stated in the writ of execution that the date was August 2, 1983.

Following levy on the receipts, the judgment remained unsatisfied to the extent of $26,800. A sheriff's sale was held on November 30, 1983, to sell Cannon's assets. Cannon's counsel was properly notified. The notice from the sheriff's office revealed the security interests against the property: Western State Bank held a first security interest in the amount of $20,500, and C & T held a second security interest pursuant to the Agreement and to be enforced by the order of the trial court for $130,400. C & T filed a financing statement and a copy of the Agreement with the Minnesota Secretary of State prior to the sale. C & T was the successful bidder for the amount of its unsatisfied judgment.

### SUBSEQUENT EVENTS

In late 1983 Keith Hofeld, a former Cannon employee; James Ballenthin, an attorney; and a third party formed DHP Productions, Inc. Hofeld had been present at the sheriff's sale.

On December 31, 1983, DHP Productions acquired Western State Bank's first security interest. On January 27, 1984, Ballenthin submitted an offer to C & T, on behalf of DHP, to purchase the Haunted Mansion for $122,000. The offer was not accepted. Subsequently, DHP demanded payment in full under the promissory note and security interest of Western State Bank which it had acquired. C & T paid.

In April 1984, C & T negotiated a sale to Robert J. Kohnen and Joseph Markovich. The sale was contingent upon approval by the Minnesota State Fair Board.

In mid-May 1984, Hofeld purchased Cannon's stock in Cannon Minnesota. On June 7, 1984, the State Fair Board approved C & T's sale. On June 12, 1984, Cannon, now owned by Hofeld and represented by Ballenthin, brought a motion for an Amended and Supplemental Answer and Counterclaim against C & T. Cannon sought to enjoin any sale of the Haunted Mansion. C & T opposed Cannon's Motion and moved to strike the pleadings as a sham. C & T also moved for attorney's fees pursuant to Minn.Stat. § 549.21. $1,168 in attorney's fees were awarded against Cannon and its attorneys.

When Cannon brought its motion, the closing had to be delayed. Once the trial court entered its order on August 8, 1984, the closing occurred. The new owners of

the Haunted Mansion operated it during the 1984 State Fair.

## ISSUES

1. Did the trial court err in determining that Cannon's motion was not brought in good faith?

2. Did the trial court err in denying C & T's motion to strike?

The trial court determined that Cannon's motion was not brought in good faith, and consequently assessed attorney's fees against Cannon, pursuant to Minn.Stat. § 549.21 (1984).

## ANALYSIS

### I.

■ The trial court's determination as to Cannon's bad faith in bringing this action was based solely on affidavits and documentary evidence. This court need not defer to the trial court's assessment of the meaning and credibility of the evidence, but may review the matter de novo. *NSP Company v. Williams*, 343 N.W.2d 627, 630 (Minn.1984).

Cannon claims that the motion was a proper exercise of its legal rights in response to C & T's judgment sale of Cannon's property under false and misleading representations.

C & T's representation attached to the notice of sale states in pertinent part:

> The sheriff's notice of sale should set forth that the property being sold is subject to security interests in favor of the Western State Bank in the amount of approximately $20,500.00, together with accrued interest thereon, and in favor of C & T Recreation, Inc., in the amount of approximately $130,400 together with accrued interest thereon.

Cannon claims this representation is fraudulent for several reasons: either because C & T *never* had any security interest whatsoever in the Haunted Mansion, or because C & T only had a security interest in a 50% interest in the property, or because the execution and judgment sale was a foreclosure of C & T's then existing security interest.

■ Cannon's claims are without merit. First, it is clear that C & T held a security interest pursuant to the original Agreement and the trial court's order allowing C & T to exercise its rights under the Agreement and "the documents provided therein." Second, C & T's interest was an undivided one-half interest, not an interest in a physical one-half of the assets. A purchaser at the sheriff's sale could not have purchased anything free and clear of C & T's security interest. Finally, the judgment sale was not a foreclosure of C & T's security interest. The security interest was taken to secure the 1982, 1983, 1984, 1985, and 1986 installments under the Agreement. Only the 1982 and 1983 installments were reduced to judgment—the 1984, 1985, and 1986 installments had not yet come due under the promissory note.

■ Cannon further alleged in its counterclaim that the execution and sale were fraudulent because the writ of execution stated that the judgment was entered on August 2, 1983, when in fact it was entered on September 2, 1983. The misrecital in an execution of the date of the judgment is an immaterial variance when the judgment is otherwise sufficiently identified. *Millis v. Lombard*, 32 Minn. 259, 20 N.W. 187 (Minn.1884).

■ Cannon also alleged in its counterclaim that C & T had not complied with the provisions of Article 9 of the Minnesota Uniform Commercial Code, Minn.Stat. § 336.9–101. C & T did not have to comply with this section since it elected to execute on its judgment rather than to foreclose its security interest. When a secured party elects to execute on its judgment, Article 9 of the code does not apply. Minn.Stat. § 336.9–501(1), (5) (1984). The law of Minnesota dealing with execution sales controls.

■ Each and every claim Cannon asserted in its motion for an amended answer and counterclaim is unfounded. It is clear to this court that Hofeld bought Cannon Minnesota for the purpose of bringing the motion and interfering with the closing on C & T's sale of the Haunted Mansion. The motion was an impermissible collateral attack on a judgment. Accordingly, the trial court was correct in determining that Cannon's motion was not brought in good faith, and in assessing attorney's fees against Cannon and its attorney pursuant to Minn.Stat. § 549.21.

## II.

■ C & T seeks review of the trial court's order denying its motion to strike Cannon's amended and supplemental answer and counterclaim as a sham. In light of the fact that the trial court never granted Cannon's motion to amend the answer and counterclaim, C & T's motion to strike was correctly determined to be moot.

## III.

This court further relies on the representations of counsel for C & T that, since a sale of the Haunted Mansion has been made, the new owner having operated it during the 1984 State Fair, it will dismiss the remainder of its action against Cannon Minnesota, i.e., it will not seek to collect the amounts still due under the promissory note.

## DECISION

Cannon's motion for an amended answer and counterclaim was an attempt to collaterally attack a judgment sale. The motion was brought in bad faith and attorney's fees were properly assessed against Cannon and its attorney.

C & T's motion to strike the amended answer and counterclaim, which was never granted, was moot.

Affirmed.