DAKOTA BANK & TRUST CO. OF BIS-
MARCK, formerly known as the Bank
of Kirkwood Plaza, a North Dakota
corporation, Plaintiff and Appellee,

v.

Kenneth REED and Monroe Chase,
Defendants and Appellants,

and

Commander Aviation
Corporation, Defendant.

Civ. No. 11265.

Supreme Court of North Dakota.

March 26, 1987.

Bair, Brown & Kautzmann, Mandan, for plaintiff and appellee; argued by Malcolm Brown.

Mackenzie, Jungroth, Mackenzie & Reisnour, Jamestown, for defendant and appellant Kenneth Reed; argued by James R. Jungroth.

John Mack, New London, Minn., and Rauleigh D. Robinson, Bismarck, for defendant and appellant Monroe Chase; argued by John E. Mack.

MESCHKE, Justice.

Kenneth Reed and Monroe Chase appeal from a district court order which denied their Rule 60(b), N.D.R.Civ.P., motions for relief from judgments holding them liable as guarantors. We affirm.

During July 1975, the Bank of Kirkwood Plaza, now known as the Dakota Bank & Trust Co. of Bismarck [Bank], extended credit to Commander Aviation Corporation [Commander], whose business was selling

and leasing airplanes. At that time Reed and Chase, officers of Commander, apparently executed personal guarantees for payment of the future indebtedness of Commander. On June 15, 1981, the Bank loaned Commander $135,406.59. The note was secured by a security agreement covering certain specified property and "[a]ll property of every kind and description in which [Commander] has or may acquire any interest now or hereafter...." Commander defaulted on the note.

In August 1984 the Bank brought an action against Commander, and against Reed and Chase as guarantors, seeking a money judgment for the outstanding indebtedness. In its complaint the Bank also sought an order that Commander deliver to it all inventory and property listed in the security agreement "for sale according to the provisions of N.D.C.C. Chapter 41–09."

Default judgment was entered against Commander on February 27, 1985. Chase answered the complaint and denied the "validity" of the guarantee agreement and asserted that the amount of the alleged debt was "incorrect." Reed answered and denied signing the guarantee agreement. The Bank moved for summary judgment against Reed and Chase. Chase failed to respond so summary judgment was entered against him for $104,848.69 on February 27, 1985. Reed's response did not address the merits of the case so summary judgment was entered against him for $107,434.35 on June 4, 1985. None of the judgments ordered delivery of Commander's secured property to the Bank for sale under the provisions of Chapter 41–09, N.D.C.C. No appeals were taken from the judgments.

During the summer of 1985, some settlement discussions were held between Reed, Chase, and the Bank, but no agreements were reached. Pursuant to a writ of execution, the Williams County Sheriff levied upon the interest of Commander in an airplane at Williston. Chase received notice of the execution and levy and was informed by letter that the airplane would "be sold at public auction...." Following publication of the Notice of Sheriff's Sale pursuant to § 28–23–01, N.D.C.C.,[1] the airplane was sold on February 13, 1986 to Donald E. Larson for $10,500, which was credited on the judgments.

On February 26, 1986, Chase moved for relief from judgment under Rule 60(b), N.D.R.Civ.P., citing as grounds fraud, misrepresentation and misconduct on the part of the Bank, and that the judgment had been "in part satisfied and released...." Reed also moved for relief from judgment on March 11, 1986. His grounds included those set forth in Chase's motion, but added surprise, newly discovered evidence and that "proper proof was not given to the Court of the amount due in that the original note was not introduced in Court and that the Court was not told that the [Bank] had an assignment of a lease and title signed in blank to [the airplane sold at the Sheriff's sale] when it knew or should have known by reasonable diligence that such was in its file and failed to inform the Court of these set off amounts so that said Judgment is void." Following a hearing, the trial court denied the motions. These appeals followed.

In reviewing denial of a motion to set aside a regularly entered judgment under Rule 60(b), N.D.R.Civ.P., we do not determine if the trial court was substantively correct in entering the judgment from which relief is sought. Rather, our function is to determine if the trial court abused its discretion in ruling that there were not sufficient grounds for disturbing the finali-

---

1. Section 28–23–01, N.D.C.C., provides:
   "28–23–01. *Sale of personal property—Notice of sale.*—The officer who levies upon personal property, other than crops or perishable property, by virtue of an execution, before he proceeds to sell the same, must cause public notice to be given of the time and place of such sale by advertisement published once each week for two successive weeks next before the day of sale, in some newspaper printed in the county, such newspaper to be designated by the judgment creditor or his attorney, or, in case no newspaper is published therein, by posting advertisements in five public places in the county."

ty of the judgment. *Fleck v. Fleck*, 337 N.W.2d 786, 789 (N.D.1983). The moving party has the burden of establishing that there are sufficient grounds to do so. *State Bank of Burleigh County Trust v. Patten*, 357 N.W.2d 239, 242 (N.D.1984).

## I

Some of Reed's arguments, such as his assertions that he did not sign the guarantee agreement and that material factual disputes precluded summary judgment, relate to the propriety of the underlying judgment rather than to reasons for setting aside that judgment. These issues are not properly before us in this appeal. *See Fleck, supra.*

## II

■ We are not impressed with Reed's claim that the judgment is void because the original promissory note was not presented to the court. While Rule 55(a)(1), N.D.R. Civ.P., calls for "production of the written instrument, if any," before entry of a default judgment for a sum certain, our rules of evidence do permit use of a copy. Pursuant to Rule 1003, N.D.R.Evid., a duplicate is admissible unless a genuine question is raised as to the authenticity or continuing effectiveness of the original or where it would be unfair under the circumstances to admit the duplicate in lieu of the original. *See also* Rule 1001(4), N.D.R. Evid. An affidavit by the Bank's vice-president attached a copy of the note, stating that it was "a true and correct copy of the Promissory Note...." Reed never questioned the authenticity of the original promissory note.

## III

Reed and Chase argue that the judgment should be reopened because of newly discovered evidence that the Bank held an assignment of a lease of the airplane sold at the Sheriff's sale. Reed and Chase contend that the Bank's failure to credit the lease assignment against Commander's indebtedness constitutes fraud and miscon-duct on the part of the Bank justifying Rule 60(b) relief.

This record shows that Commander entered into a lease purchase agreement for the airplane with Jim and Marlene McGill dated August 17, 1981, and payable in 36 monthly installments totaling approximately $36,000. Reed's affidavit asserts that the Bank requested that Commander assign the lease proceeds to it, that he met with H. Charles Boyd-Snee, a Bank official, and that he there wrote the assignment of the lease in longhand. Reed claims that he was assured by the Bank that it would collect the lease payments and credit them to Commander's account. Chase contends in his affidavit that the Bank purchased the lease agreement from Commander for an immediate credit of $24,800 against Commander's account. No written assignment of the lease purchase agreement was offered to substantiate these claims. Apparently, the Bank had in its files a copy of the McGill-Commander lease purchase agreement and credited a $2,000 down payment and two monthly payments of $1,000 each from the McGills against commander's account. The McGills, however, made no further payments during the following three years, and neither the Bank nor Commander took any action to enforce the lease purchase agreement.

Boyd-Snee, in his affidavit, denied that he had met with Reed, that Reed wrote out an assignment of the lease to the Bank, and that he had assured Reed that the Bank would collect payments under the lease. James Raaum, former president of the Bank, stated in an affidavit that he agreed on the part of the Bank to "hold" the lease purchase agreement, and "not simply to take an assignment of the proceeds which would come into Commander's hands." He also stated that "the value of this lease purchase agreement would have been credited as received against the note of Commander's...." He further stated that the Bank later determined that the lease purchase agreement should be converted into a conditional sales agreement, "so the full amount due would have been loaned to the McGills and applied to Com-

mander's account," but that the McGills never signed the conditional sales contract.

■ The trial court considered this evidence and concluded that Reed and Chase failed to establish that there had been an assignment or sale of the lease purchase agreement to the Bank. The court further concluded that even if there had been an assignment, Reed and Chase failed to show that it constituted "newly discovered evidence that they couldn't by reasonable diligence have produced before." Under the circumstances, we cannot say that the district court abused its discretion in refusing to grant relief from the judgments on this ground.

### IV

Reed and Chase claim that they are entitled to relief because the sale of the airplane was not "commercially reasonable" and because they did not receive "reasonable notification" of the sale under the provisions of § 41–09–50(3) [9–504], N.D.C.C.[2]

When a debtor is in default, the secured creditor "may reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure." Section 41–09–47(1) [9–501], N.D.C.C. J. White and R. Summers, Uniform Commercial Code § 26–4, at p. 1091 (2d ed. 1980), summarize the two basic methods a secured party may use upon the debtor's default: "First, he can seize the goods subject to his security interest and either keep them in satisfaction of the debt or resell them and apply the proceeds to the debt.... Alternatively, the creditor can ignore his security interest and obtain a judgment on the underlying obligation and proceed by execution and levy."

### A

■ Chase contends that once the Bank took "possession" of the collateral, it was required to dispose of the collateral under Chapter 41–09 [Article 9], N.D.C.C., and could not resort to levy and execution under Chapter 28–23, N.D.C.C. Chase claims that the Bank either took or retained "possession" of the copy of the McGill-Commander lease purchase agreement and of the airplane. The flaw in Chase's argument is his assumption that the Bank took "possession" or, in effect, "repossessed" Commander's collateral. We have upheld the trial court's determination that the lease purchase agreement was not assigned or sold to the Bank. Thus, while the Bank may have had the right to foreclose on the lease purchase agreement pursuant to its security agreement upon Commander's default, Commander still had the primary right to enforce the provisions of the lease purchase agreement against the McGills upon their default. Commander's rights under the lease purchase agreement were in no way hindered by the Bank having a copy of the agreement in its files. In order to constitute a creditor's taking of "possession" or "repossession" of secured collateral, it must be "shown that the [creditor] at some time intended to treat the

---

**2.** Section 41–09–50(3) [9–504], N.D.C.C., provides:

"3. Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms, but every aspect of the disposition, including the method, manner, time, place, and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale. In the case of consumer goods no other notification need be sent. In other cases notification shall be sent to any other secured party from whom the secured party has received (before sending his notification to the debtor or before the debtor's renunciation of his rights) written notice of a claim of an interest in the collateral. The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations, he may buy at private sale."

[collateral] in a way that would exclude any right of control thereof that the [debtors] had or might ‚have." *Minnesota State Bank of St. Paul v. Batcher*, 263 Minn. 71, 116 N.W.2d 77, 81 (1962). That the Bank held a copy of the lease purchase agreement in its file did not constitute the taking of "possession" or a "repossession" of the collateral. Therefore, we reject Chase's contention that the Bank impermissibly combined Uniform Commercial Code remedies and non-Code remedies because it obtained a judgment on the debt and proceeded by execution and levy. *Cf. Advanced Irrigation, Inc. v. First National Bank*, 366 N.W.2d 783, 785 (N.D.1985) ["There may indeed be situations where a creditor in possession of collateral has forfeited all rights to any alternative remedy, particularly when to hold otherwise would permit a double recovery, ..."]

■ Chase claims that although the Bank "never repossessed the airplane per se, [it] requested Defendants to give the airplane back to them, which was done, after which the plane was given to the sheriff" for execution and levy. The record does not support this claim. In his affidavit Chase states that during settlement negotiations he offered to obtain the airplane from the McGills and bring it to Bismarck for disposition by the Bank. However, the settlement never materialized. Ultimately, the Sheriff levied upon the property in Williston pursuant to a writ of execution. Mere preliminary arrangements between the debtor and creditor to sell the collateral and apply the proceeds to the debt are not sufficient to constitute a "repossession" of the collateral. *Cf. Batcher, supra.* There is · insufficient showing that the Bank took actual or constructive possession of the airplane.

## B ·

The last, and a more difficult, issue is whether a creditor who obtains a judgment on the debt and levies upon secured collateral under Chapter 28–23, N.D.C.C., is subject to the notice and "commercial reasonableness" requirements of § 41–09–50(3) [9–504], N.D.C.C.

Section 41–09–47(5) [9–501], N.D.C.C., provides:

"5. When a secured party has reduced his claim to judgment the lien of any levy which may be made upon his collateral by virtue of any execution based upon the judgment shall relate back to the date of the perfection of the security interest in such collateral. A judicial sale, pursuant to such execution, is a foreclosure of the security interest by judicial procedure within the meaning of this section, and *the secured party may purchase at the sale and thereafter hold the collateral free of any other requirements of this chapter.*" [Emphasis added.]

Official Comment 6 to U.C.C. § 9–501 states:

"6. Under subsection (1) a secured party is entitled to reduce his claim to judgment or to foreclose his interest by any available procedure, outside this Article, which state law may provide.... The second sentence of ... subsection [(5)] makes clear that a judicial sale following judgment, execution and levy is one of the methods of foreclosure contemplated by subsection (1); *such a sale is governed by other law and not by this Article and the restrictions which this Article imposes on the right of a secured party to buy in the collateral at a sale under Section 9–504 do not apply.*" [Emphasis added.]

Although neither § 41–09–47(5) [9–501], N.D.C.C., nor the Official Comment to that section are entirely clear on whether U.C.C. notice and commercial reasonableness requirements apply to judicial sales to a third party purchaser, commentators suggest that post-judgment execution procedures are free of all Article 9 requirements. 1A Bender's Uniform Commercial Code Service, Secured Transactions, § 8.08[1], at pp. 8–151—8–152 (1986), states:

"Another advantage stemming from proceedings to a judicial sale pursuant to

a judgment on the debt stems from the fact that the Code makes such a sale a foreclosure, and the secured party is free to 'purchase at the sale and thereafter hold the collateral free of any other requirements of this Article.' As the comment to section 9–501 suggests, the quoted language probably means that a judicial sale is entirely governed by law outside the Code. Consequently, this kind of proceeding frees the secured party from all of the terms of article 9, including the obligations to send notices to the debtor and certain other secured parties under section 9–504(3); [and] to assure that every aspect of the disposition, including the method, manner, time, place and terms, are commercially reasonable under section 9–504(3); . . .

"Although the statute is literally silent on the question of this kind of freedom of action in the judicial sale to a third party purchaser, there is even less reason to hold a stranger to the secured transaction to the listed requirements of article 9. Here the explanatory comment to section 9–501(5) indicates that the language apparently limiting the liberating provision to cases where the secured party purchases is aimed at emphasizing the freedom given to the secured party to purchase at a judicial sale." [Footnotes omitted.]

*See also* J. White and R. Summers, *supra,* at pp. 1092–1093 ["[S]ince officers of the court administer the entire procedure of judgment and execution on a debt, the creditor eliminates the risk of an improperly conducted repossession or resale under 9–504."]; B. Clark, The Law of Secured Transactions Under the Uniform Commercial Code ¶ 4.3[2], at p. 4–15 (1980) ["The advantage of foreclosing on the collateral through the sheriff is that the execution sale cannot be challenged as 'commercially unreasonable,' . . ."].

Other courts have recognized that if a secured party obtains a judgment on the debt itself, execution levy and sale of property owned by the debtor, including collateral covered by the security agreement, are not governed by the provisions of Article 9 of the U.C.C. *See Bilar, Inc. v. Sherman,* 40 Colo.App. 38, 572 P.2d 489, 492 (1977); *Roebuck v. Walker-Thomas Furniture Co., Inc.,* 310 A.2d 845, 848 n. 9 (D.C.Ct. App.1973); *Owens v. First Commonwealth Bank of Prestonburg, Ky.,* 706 S.W.2d 414, 416 (Ky.Ct.App.1985); *C & T Recreation, Inc. v. Cannon Minnesota,* 367 N.W.2d 591, 594 (Minn.Ct.App.1985); *S.M. Flickinger Co., Inc. v. 18 Genesee Corp.,* 71 A.D.2d 382, 423 N.Y.S.2d 73, 75 (1979); *Farmers State Bank in Afton v. Ballew,* 626 P.2d 337, 339 (Okla.1981).

Chase relies upon *Spillers v. First National Bank of Arenzville,* 81 Ill.App.3d 199, 36 Ill.Dec. 477, 400 N.E.2d 1057 (1980); *American City Bank v. Western Auto Supply,* 631 S.W.2d 410 (Tenn.Ct.App. 1981); *Farmers State Bank in Afton, supra; Michigan National Bank v. Marston,* 29 Mich.App. 99, 185 N.W.2d 47 (1970); and *Land v. Cessna Aircraft Co.,* 466 So.2d 1265 (Fla.Ct.App.1985), for the proposition that a creditor is subject to the provisions of U.C.C. § 9–504(3) even if levied property is sold at a Sheriff's auction. However, none of these cases involved a situation where disposal of the collateral occurred through an execution sale. In each case the secured creditor employed Article 9 procedures rather than non-Code procedures in an attempt to dispose of the collateral.

■ In this case, the Bank obtained a judgment on Commander's outstanding debt, and executed on the judgment by a Sheriff's levy upon and sale of the airplane in accordance with Chapter 28–23, N.D.C.C. This was a non-Code alternative available to the Bank. Consequently, we conclude that the notice and commercial reasonableness requirements of § 41–09–50(3) [9–504], N.D.C.C., did not apply to this procedure. *See generally* § 41–09–53(2) [9–507), N.D. C.C.: "A disposition which has been approved in any judicial proceeding . . . shall conclusively be deemed to be commercially reasonable, but this sentence does not indicate that any such approval must be obtained in any case nor does it indicate that

any disposition not so approved is not commercially reasonable."

### C

Chase asserts that if the notice requirements of § 41–09–50(3) [9–504], N.D.C.C., are not applied to the execution and levy provisions of Chapter 28–23, N.D.C.C., then Chapter 28–23 is unconstitutional. Consider also, *First Mutual Corporation v. Samojeden,* 518 A.2d 525, 527 (N.J.Super.A. D.1986) ("Effective notice is the cornerstone of procedural due process.") But, this issue was not raised in the trial court and we therefore decline to address it. *See Farmers State Bank of Leeds v. Thompson,* 372 N.W.2d 862, 865 n. 3 (N.D.1985).

We conclude that the trial court did not abuse its discretion in refusing to grant Chase and Reed relief from judgments under Rule 60(b), N.D.R.Civ.P. Accordingly, the order denying their motions is affirmed.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and GIERKE, JJ., concur.