Craig J. GAVIN, Appellant,

v.

**WASHINGTON POST EMPLOYEES FEDERAL CREDIT UNION, Appellee.**

No. 12308.

District of Columbia Court of Appeals.

Submitted Dec. 27, 1977.

Decided Feb. 1, 1979.

Craig J. Gavin, pro se.

Thomas S. Templeton, New Carrollton, Md., for appellee.

Before KELLY, KERN and FERREN, Associate Judges.

FERREN, Associate Judge:

This is an appeal from a deficiency judgment against appellant, Craig J. Gavin, who defaulted on a secured promissory note held by appellee, Washington Post Employees Federal Credit Union (the Credit Union). After repossessing the collateral, a used automobile, the Credit Union resold it without giving the notice to Gavin prescribed by the Uniform Commercial Code (UCC), D.C. Code 1973, § 28:9–504(3). The trial court awarded the Credit Union a judgment for the deficiency after resale, less the 10% damage remedy prescribed in D.C. Code 1973, § 28:9–507(1) for the Credit Union's failure to comply with the default provisions (Part 5) of UCC Article 9.

Resolution of this appeal has had to await our en banc decision in *Randolph v. Frank-*

*lin Investment Co., Inc.*, D.C.App., 398 A.2d 340 (1979), in which we held that failure to give the requisite notice of resale of collateral under the UCC bars a deficiency judgment altogether. In addition, this appeal presents the question whether Gavin's voluntary surrender of the collateral eliminated his right under the UCC to receive notice of resale (as a matter of statutory interpretation, waiver, or estoppel). On the facts here we hold that the trial court's award of a deficiency judgment against Gavin must be reversed while the 10% damage award to Gavin, totaling $498.60, is affirmed.

I.

After a nonjury trial, the court found the following facts: in March 1974, the Credit Union lent $1,900 to Gavin, who signed a $2,208.60 note payable in 30 monthly installments, secured by a 1971 Dodge Charger. The "Security Agreement" included a provision that the "[d]ebtor will not sell or offer to sell or otherwise transfer the collateral or any interest therein without the written consent of the secured party." Having received no payment from Gavin since he left his job at the Washington Post in August 1974, the Credit Union informed Gavin of his delinquency on January 22, 1975, and again on March 6, 1975. After the first of these notices, Gavin had conversations with a number of Credit Union employees, asking for permission to sell the car (presumably to help pay the debt). He was told that he could do so but never received the required written consent.

On April 1, 1975, the Credit Union authorized the Laurel Adjustment Bureau to pick up Gavin's car. After doing so, the Bureau informed the Credit Union that the car's general condition was "fair," that the mileage was 65,495, that the right front fender was damaged, and that the Bureau would store the car. Sometime around the date on which the car was repossessed, Gavin had sent the keys to the Credit Union along with a note: "Here are my car keys, as per our conversation on the phone." After confirming the Bureau's report on the condition of the car through a visual inspection by one of its own employees, the Credit Union authorized the Bureau on May 5, 1975, to sell the car for $350. (According to the Bureau, $350 represented the higher of the two bids it had received.) The Credit Union did not give Gavin any notice of the sale.

Subsequently, the Credit Union sued Gavin for a $1,249.53 deficiency plus interest and costs. Gavin counterclaimed for damages for violation of the UCC notice requirement. The trial judge agreed with Gavin that the Credit Union had violated D.C. Code 1973, § 28:9–504(3).[1] The court nevertheless held that Gavin had the burden of proving the fair market value of the automobile, but had failed to demonstrate that the value exceeded the resale price of $350; that in accordance with our (now vacated) opinion in *Randolph v. Franklin Investment Co., Inc.*, D.C.App., 368 A.2d

1. D.C. Code 1973, § 28:9–504(3) provides as follows:

> Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, and except in the case of consumer goods to any other person who has a security interest in the collateral and who had duly filed a financing statement indexed in the name of the debtor in the District or who is known by the secured party to have a security interest in the collateral. The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or if of a type which is the subject of widely distributed standard price quotations he may buy at private sale.

As noted in our recent decision in *Randolph (en banc), supra*, failure to give the debtor proper notice of the resale of a repossessed motor vehicle also violates the District of Columbia Rules and Regulations, Title 5AA §§ 5.2–5.3.

1151 (1977), the Credit Union had established a deficiency of $1,153.72 representing the balance due on the note ($1,442.72) plus the cost of repossession ($61) less the $350 resale proceeds; and that the Credit Union's violation of the notice requirements entitled Gavin under D.C. Code 1973, § 28:9–507(1) to a $498.60 setoff comprised of the "original credit service charge" ($308.60) and 10% of the "original loaned amount" ($190).[2] Thus, the court awarded the Credit Union a net deficiency judgment of $655.12.[3] The trial court subsequently denied Gavin's Motion to Amend and Supplement Findings of Fact and Conclusions of Law and his Motion for New Trial.

II.

The Credit Union's entitlement to a deficiency judgment cannot be sustained. In the first place, the trial judge erred in placing the burden on Gavin to prove the fair market value of the automobile at the time of resale. Even those jurisdictions interpreting the UCC to permit a deficiency judgment to a secured creditor who fails to give notice of resale place the burden on the creditor to prove that "the fair and reasonable value of the security [is] being credited to the debtor's account." *Conti Causeway Ford v. Jarossy,* 114 N.J.Super. 382, 276 A.2d 402, 404–05 (1971), *aff'd,* 118 N.J.Super. 521, 288 A.2d 872 (1972). *See Randolph (en banc), supra,* 398 A.2d at 347 n. 12. In any event, because the Credit Union did not give notice of resale, our decision in *Randolph (en banc), supra* bars recovery of a deficiency judgment here—unless the UCC is inapplicable to "voluntary" repossessions for Gavin waived or is estopped from relying on the notice requirement.

Because Gavin consented to having his car picked up and sold, and even delivered the keys himself, the Credit Union argues that this was a "voluntary," not an "adversary," repossession. The Credit Union accordingly asserts that it was not bound to honor the statutory notice requirements—and thus cannot lawfully be barred from obtaining a deficiency judgment.

A debtor's right to notice is not limited to situations in which the creditor has repossessed collateral without the knowledge or against the will of the debtor. In fact, even when a creditor contemplates a private sale and is accordingly required only to notify the debtor of "the time after which any private sale . . . is to be made," D.C. Code 1973, § 28:9–504(3), a debtor's voluntary delivery of the collateral for the purpose of having it sold by the creditor is not the equivalent of notice to the debtor of the time "after which" a private sale will take place. *Nelson v. Monarch Investment Plan,* 452 S.W.2d 375, 377 (Ky.1970). In such a case, the debtor is still "entitled to notification of a specific date after which the creditor may proceed to dispose of the collateral." *Id.; see Morris Plan Co. v. Johnson,* 133 Ill.App.2d 717, 271 N.E.2d 404, 407 (1971). All the more so, when a public sale is contemplated, entitling a debtor to a more precise notice of time and place of sale, we perceive no reason why a debtor's voluntary delivery of the

2. D.C. Code 1973, § 28:9–507(1) provides as follows:

> If it is established that the secured party is not proceeding in accordance with the provisions of this Part disposition may be ordered or restrained on appropriate terms and conditions. If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this Part. If the collateral is consumer goods, the debtor has a right to recover in any event an amount not less than the credit service charge plus ten per cent of the principal amount of the debt or the time price differential plus ten per cent of the cash price.

3. The trial judge explicitly barred the Credit Union from recovering interest claimed from the date the collateral was sold to the date of the judgment. (The Credit Union did not claim interest for the period between default and resale.) Because of our disposition of the case we need not review this part of the court's order. In addition, because neither party questions the trial judge's § 28:9–507(1) computation, we accept that computation for purposes of this appeal without reviewing it on the merits. *See generally* J. White & R. Summers, Uniform Commercial Code at 997–99 (1972).

collateral should preempt his right to strict compliance with the notice requirements. *See Randolph (en banc), supra,* 398 A.2d 345. It follows that Gavin's voluntary surrender of the automobile did not automatically extinguish his right under the UCC to notice of resale. *See Barnett v. Trussell Ford, Inc.,* 129 Ga.App. 176, 198 S.E.2d 903 (1973); *Nelson v. Monarch Investment Plan, supra; Morris Plan Co. v. Johnson, supra.*[4]

This does not end the inquiry, however, for even though the UCC notice requirements apply to "voluntary" or "non-adversary" repossessions, we still have the question whether the principles of waiver or estoppel can preclude a debtor from asserting lack of notice.[5]

Arguably, D.C. Code 1973, § 28:9–501(3) prohibits waiver:

> To the extent that they give rights to the debtor and impose duties on the secured party, the rules stated in the subsections referred to below *may not be waived or varied* except as provided with respect to compulsory disposition of collateral (subsection (1) of section 28:9–505) and with respect to redemption of collateral (section 28:9–506) but the parties may by agreement determine the standards by which the fulfillment of these rights and duties is to be measured if such standards are not manifestly unreasonable: . . . [Emphasis added.] [6]

On the other hand, at least two courts have indicated that § 28:9–501(3) precludes only "a pre-emptive waiver found in the security agreement itself"; it does not "deny a party the right to invoke the principles of waiver and estoppel which may apply to the subsequent transactions of the parties." *Nelson v. Monarch Investment Plan, supra* at 378 (debtor's delivery of automobile to creditor and related actions amounted to waiver or estoppel barring assertion of the right to notice in suit for deficiency judgment)[7]; *see Grant County Tractor Co. v. Nuss,* 6 Wash.App. 866, 496 P.2d 966, 969 (1972) (debtor's conduct, including return of collateral and written notice of election to rescind sale of farm equipment, held tantamount to waiver of right to notice of resale).

Even if we assume, for the sake of argument, that a debtor after default can waive or renounce the right to notice of resale, we find no basis for holding that the Credit Union can prevail here. Counsel for the Credit Union argues on appeal, as at trial, that because there had been "a voluntary action on the part of both the debtor and the creditor, . . . the provisions of the D.C. Code relating to involuntary repossessions do not apply. . . ." As indicated at note 5, *supra,* counsel in making this argument did not use the words "waiv-

4. It is not clear whether the sale in the present case was public or private. The trial court implied that it was public by finding that the Credit Union did not give Gavin "notice of either the time or place of the sale. . . ." As indicated in the text, the type of sale is immaterial to the question whether a debtor's voluntary delivery of the collateral for resale obviates the need for a creditor's compliance with the notice requirements.

5. The appellee Credit Union does not use the words "waiver" or "estoppel" in its brief; nevertheless, these concepts are sufficiently akin to its argument to warrant consideration.

6. *See also* D.C. Code 1973, § 40–902(f) (prohibits and voids provision in contract for installment sale of motor vehicle waiving "any provision of this chapter [40]," and authorizes the District of Columbia Council to prohibit waiver of, and declare void, "any regulation . . . relating to retail installment transactions.")

7. In *Nelson, supra,* the court stated: "The following facts appear. Defendant voluntarily transferred complete dominion and control of this automobile to plaintiff. He was advised in substance that he probably could obtain a better price than the plaintiff if he sold the automobile. Defendant told plaintiff that he did not want the car back under any circumstances. Defendant delivered to plaintiff the car, the car keys, the license receipt and consignment agreement. The record indicates clearly defendant had no further interest in this automobile and did not intend to bid on it. There is no indication that any notice given him would have resulted in a higher sales price of the automobile. The evidentiary material establishes an intentional relinquishment of the right to notice. If it did not constitute a waiver, it seems clear that defendant's actions relied on by plaintiff estopped him to claim a violation of the statute." [*Id.* at 378.]

er" or "estoppel"; thus, we cannot know for sure whether counsel was injecting those equitable issues or, instead, was focusing more narrowly on the legal argument (which we have rejected) that a debtor who voluntarily surrenders collateral does not have a statutory right to notice. In any event, after taking the case under advisement, the trial court found, in awarding setoff damages to Gavin, that the Credit Union had not given Gavin notice of the sale of his automobile and concluded "as a matter of law that the plaintiff [Credit Union] has not complied with the law of the District of Columbia regarding the sale of collateral when a debtor is in default under a security agreement."

If it can be said that the Credit Union implicitly argued waiver and estoppel, it must also be said that the trial court implicitly rejected them.[8] On the other hand, if the Credit Union and the trial court limited their concern to the narrower legal argument about a "voluntary" repossession, then the Credit Union's failure to raise "waiver" and "estoppel" at trial precludes their consideration on appeal unless injustice is manifest. *Bullock v. Young,* D.C. Mun.App., 118 A.2d 917, 919 (1955)[9]; *cf. W. W. Chambers Inc. v. Audette,* D.C.App., 385 A.2d 10, 15 (1978) (absent a request for a jury instruction, the court's failure to give it is not reversible error absent a "miscarriage of justice"); *Barnes v. Wheeler, Inc.,* D.C.Mun.App., 55 A.2d 83, 85 (1947) (same).

We hold that Gavin must prevail under either assumption. If the trial court can be said to have considered and rejected waiver and estoppel, its conclusions are clearly supported by the evidence. *See* D.C. Code 1973, § 17–305(a); Super.Ct.Civ.R. 52; note 8, *supra.* If, to the contrary, these issues were not raised and considered at trial, we perceive no injustice in refusing to honor the arguments on appeal. As to either premise, the record does not necessarily suggest that Gavin's cooperation in turning the car over to the Credit Union manifested a desire not to receive notice of any intended disposition or was meant to lull the Credit Union into abandoning its statutory obligations to give notice. *See* note 8, *supra.* The court expressly found that the security agreement prohibited Gavin from selling the collateral "without the written consent of the secured party," that Gavin had "asked for permission to sell the car," and that the Credit Union "never sent him any written permission" to sell it. Accordingly, Gavin's delivery of the car keys to the Credit Union with a note citing "our conversation on the phone" does not establish that he had lost interest or abandoned his legal rights in the circumstances of resale. To the contrary, his initial efforts to handle the resale himself arguably indicated substantial concern that the maximum possible price be realized. *Compare Nelson, supra* at 378. We find no basis for barring Gavin from asserting lack of notice.

## III.

In accord with our decision in *Randolph (en banc), supra,* that portion of the court's

8. If the court had dealt explicitly with waiver, it would have confronted the UCC rules that the debtor cannot do so unless the waiver or renunciation is in writing, D.C. Code 1973, § 28:1–107, or, if done orally, is based on consideration, is not barred by the Statute of Frauds, and is consistent with § 28:2–209 dealing with modification of signed writings. *See* D.C.C.E. § 28:1–107, Uniform Code Comment (1967). The record of the present case does not manifest compliance with these rules on waiver. It is interesting to note that the courts in *Nelson, supra* (*see* note 7 *supra*) and *Grant County Tractor, supra* did not deal with these rules.

To justify a legal conclusion of estoppel, the court would have to find that Gavin had intended to convey the impression that he did not wish to receive notice of the sale, had expected that the Credit Union would rely on that impression, and that the Credit Union did so rely, to the point of changing its position prejudicially. *See American Century Mortgage Investors v. Unionamerica Mortgage and Equity Trust,* D.C.App., 355 A.2d 563, 565 (1976); *Parker v. Sager,* 85 U.S.App.D.C. 4, 8, 174 F.2d 657, 661 (1949). *Compare Nelson, supra* (facts quoted in note 7 *supra*).

9. "Appellant's failure to raise this point at trial prevents its consideration on appeal. Only in exceptional case[s] where injustice might otherwise result will an appellate court be prompted to review questions of law which were not raised at trial." . . . [*Id.* at 919; footnotes omitted.]

order granting the Credit Union a deficiency judgment must be reversed. Because the Credit Union has not contested Gavin's right to damages under D.C. Code 1973, § 28:9–507(1), *see Randolph (en banc), supra,* and neither party has questioned the trial court's computation, *see* note 3, *supra,* we remand the case for entry of a judgment of $498.60 in Gavin's favor on his counterclaim.

*So ordered.*