**Layne A. LINDBERG, d/b/a Lindberg Production Services, Plaintiff and Appellant,**

**v.**

**WILLISTON INDUSTRIAL SUPPLY CORPORATION, Defendant and Appellee.**

Civ. No. 11333.

Supreme Court of North Dakota.

Aug. 12, 1987.

---

Brent J. Edison, of Bjella, Neff, Rathert, Wahl & Eiken, Williston, for plaintiff and appellant.

Kathleen E. Key-Imes, of McIntee & Whisenand, Williston, for defendant and appellee.

VANDE WALLE, Justice.

Layne A. Lindberg appealed from a district court judgment which awarded damages to Williston Industrial Supply Corporation ["WISCO"] for Lindberg's breach of a lease-purchase agreement. We reverse and remand for further proceedings.

In 1983 Lindberg and WISCO entered into a lease-purchase agreement for certain oil well equipment. Lindberg agreed to make 24 monthly payments of $2,500 and WISCO agreed to sell the property to Lindberg for one dollar at the end of the 24-month period. Lindberg experienced difficulty in making his monthly payments, and after 18 months had made only 6 of the required payments. These payments totalled $15,600, or 6 payments of $2,500 each plus $600 sales tax.

WISCO notified Lindberg in November 1984 that he was in default and that WISCO would "pick up" the equipment if the past-due balance was not paid. Lindberg responded by letter, stating that the equipment was needed to keep the well in production and that he would not voluntarily allow WISCO to take back the equipment. On January 22, 1985, WISCO filed an oil and gas well lien in the amount of $23,400 against the well. On February 5, 1985, Lindberg sent notice to WISCO of his intention to rescind the parties' agreement.

On March 14, 1985, Lindberg commenced an action against WISCO seeking rescission, and WISCO counterclaimed seeking foreclosure of its lien. Barbara Lindberg, Layne's wife, subsequently wrote to WISCO and requested that the equipment be removed from the wellsite so that the Lindbergs could install substitute equipment. WISCO removed most of its equipment in April, and the rest in July. WISCO filed a second lien in the amount of $7,800 in April.

After retaking the equipment WISCO rented a portion of it to another company for several months. This equipment was returned to WISCO at the end of the rental period and remained in WISCO's possession at the time of trial. WISCO sold the rest of the equipment. WISCO received $25,430 for the sale and re-rental of the equipment, but refused to credit this amount against Lindberg's debt. WISCO did not give Lindberg notice of the sale or re-rental of the equipment.

The action was tried to the court. The trial court found that the lease-purchase agreement was a contract for sale and created a security interest in the equipment, and that Lindberg had breached the agreement. The court further found that WISCO's retaking of the equipment was not a repossession under Chapter 41–09, N.D. C.C., because it was done at Lindberg's insistence. The court also held that Lindberg, by requesting that WISCO remove the equipment, had "constructively waived" his right to notice of disposition of the collateral.

The court held that Lindberg was not entitled to rescission and dismissed his action against WISCO. On WISCO's counterclaim, the court awarded damages to WISCO of $30,000 as the reasonable value of use of the equipment for 12 months, plus $6,359 in expenses of retaking the equipment. WISCO was also allowed to retain the $15,600 paid by Lindberg, the $25,430 proceeds from the equipment, and to retain the equipment still in its possession. WISCO was also awarded costs and attorney fees for defending Lindberg's action and foreclosing its well lien. Finally, the court ordered the well liens foreclosed and allowed WISCO to seek payment directly from the purchaser of the production from the well. Lindberg has appealed from the judgment.

The following issues are dispositive on appeal:

1) Did the trial court employ an incorrect measure of damages?
2) Did WISCO "repossess" the equipment?
3) Did Lindberg waive his right to notice of disposition of the collateral?

Lindberg alleges that the damages awarded to WISCO constitute a double recovery. We conclude that the trial court applied an erroneous measure of damages which placed WISCO in a better position than if Lindberg had fully performed under the agreement.

■ The trial court concluded that the lease-purchase agreement was a contract for sale, which created a security interest in the equipment. WISCO has not challenged this conclusion on appeal. Thus WISCO should have been awarded appro-

priate damages for breach of a contract for sale. It is apparent, however, that the trial court awarded elements of damages which would be appropriate only if the parties' contract were a lease. The court allowed WISCO to retain the sums already paid by Lindberg, awarded damages for reasonable value of use based upon the parties' monthly payment amount, and allowed WISCO to keep the equipment without accounting for the proceeds. Although this measure of damages may arguably have been appropriate if the contract had been a true lease,[1] it is wholly inappropriate for a breach of a sales contract.

The objective in awarding damages for breach of contract is to place the non-breaching party in the position he would have been in if the contract had been fully performed. Section 41–01–06(1), N.D.C.C.; *Vallejo v. Jamestown College*, 244 N.W.2d 753 (N.D.1976); see also, Dobbs, Handbook on the Law of Remedies § 12.1 (1973). Section 32–03–36, N.D.C.C., provides that "no person can recover a greater amount in damages for the breach of an obligation than he could have gained by the full performance thereof on both sides." If Lindberg had fully performed, WISCO would have received $60,001[2] and Lindberg would have owned the equipment. Pursuant to the judgment, however, WISCO receives the following:

| | |
|---|---|
| Lindberg's Payments | $15,600 |
| Value of Use (12 months @ 2,500) | 30,000 |
| Proceeds from Sale and Re-Lease of Equipment | 25,430 |
| Value of Equipment still in WISCO's Possession | ? |
| | $71,030+ |

It is clear that WISCO has received far more than the benefit of its bargain, in violation of Section 32–03–36, N.D.C.C. See *Johnson v. Monsanto Co.*, 303 N.W.2d 86 (N.D.1981); *Bender v. Time Insurance Co.*, 286 N.W.2d 489 (N.D.1979); *Vallejo v. Jamestown College, supra.*

■ WISCO's misconceptions of contract law are aptly demonstrated by the following paragraph from its brief on appeal:

"In short, the Agreement entitled WISCO to declare the contract canceled, to retake its equipment and to recover from Lindberg the unpaid purchase price. That is what WISCO has consistently attempted to do throughout this case."

WISCO does not fully appreciate the significance of the court's conclusion that the contract was one of sale. *Compare State Bank, of Burleigh County Trust Co. v. All-American Sub, Inc.*, 289 N.W.2d 772 (N.D.1980). A seller cannot, upon the buyer's default, retake the property without accounting for the proceeds *and* recover the purchase price from the defaulting buyer. Section 41–02–85(1), N.D.C.C. This would clearly constitute a double recovery and violate Section 32–03–36, N.D.C.C.

■ WISCO contends that the existence of its well liens somehow renders the court's judgment appropriate. A lien is a charge upon property for the payment of a particular debt, and gives the lienholder the right to have the debt satisfied out of that particular property. See 51 Am.Jur.2d *Liens* §§ 1, 2 (1970). The amount of the debt is not affected by the lien; the lien is merely a mechanism for collection of the underlying debt. Thus the existence of WISCO's liens cannot alter the amount of damages to which it is entitled for breach of the parties' agreement. The liens are valid only up to the amount of damages which could properly be awarded to WISCO.

We conclude that the trial court erred in its award of damages to WISCO. In addition, we consider below other issues which will affect the proceedings upon remand.

■ Lindberg contends that the trial court erred in holding that WISCO did not repossess the equipment. Although the trial court did not specify the basis for its conclusion that the retaking of the equipment was not a repossession, it appears

---

1. Even if it had been a true lease, WISCO would have been required to mitigate its damages. See *Industry Financial Corp. v. Redman*, 383 N.W.2d 847 (N.D.1986).

2. Although the lease-purchase agreement did not mention sales tax, subsequent billings sent to Lindberg added 4 percent sales tax to each monthly payment.

that the court relied upon Lindberg's request that the equipment be removed from the wellsite. But the fact that Lindberg requested that the equipment be removed does not alter the consequences of WISCO's retaking of the equipment. A secured party is not obligated to take possession of the collateral upon demand of the debtor, but, once the creditor does so, it is charged with protecting the collateral and complying with Article 9 of the Uniform Commercial Code (Chapter 41–09, N.D.C. C.). *North Carolina National Bank v. Sharpe,* 35 N.C.App. 404, 241 S.E.2d 360 (1978); 9 Anderson, Uniform Commercial Code 3d § 9–503:17 (1985). Voluntary surrender of the collateral by the debtor does not relieve the creditor of its obligations under the Code. See e.g., *Gavin v. Washington Post Employees Federal Credit Union,* 397 A.2d 968 (D.C.1979); *Florida First National Bank v. Martin,* 449 So.2d 861 (Fla.Ct.App.1984), *overruled in part on other grounds by Weiner v. American Petrofina Marketing, Inc.,* 482 So.2d 1362 (Fla.1986); *Union Trust Company of Ellsworth v. Hardy,* 400 A.2d 384 (Me.1979).

■ In *Dakota Bank & Trust Co. of Bismarck v. Reed,* 402 N.W.2d 887, 890–891 (N.D.1987), we were faced with a similar question of what action by a secured party is necessary to constitute a repossession: "In order to constitute a creditor's taking of 'possession' or 'repossession' of secured collateral, it must be 'shown that the [creditor] at some time intended to treat the [collateral] in a way that would exclude any right of control thereof that the [debtors] had or might have.' " [Quoting *Minnesota State Bank of St. Paul v. Batcher,* 263 Minn. 71, 116 N.W.2d 77, 81 (1962) ]. In this case WISCO clearly reacquired the property with the intent to deprive Lindberg of any right of control, as evidenced by WISCO's subsequent sale and re-lease of the equipment.

■ WISCO argues on appeal that the retaking of the equipment was accomplished pursuant to its well liens, and that it was entitled to retake the equipment, retain it, and pursue foreclosure of its liens without accounting for the proceeds from the equipment. WISCO points to no case law which supports this novel contention. Most importantly, WISCO points to no provision in Chapter 35–24, N.D.C.C. (the well lien provisions), or within the general provisions of Title 35, N.D.C.C., which empowers the holder of a well lien to retake possession of equipment covered by the lien.[3] The lien statutes contemplate judi-

---

**3.** Neither party cited Section 35–01–29, N.D. C.C., which until July 1, 1985, did allow a party holding a lien on personal property to "repossess" the property for very limited purposes:

> "*35–01–29. Foreclosure of statutory lien on personal property.* Upon default in the payment of a debt secured by a statutory lien on personal property, unless a different procedure is otherwise expressly prescribed by law, such lien may be foreclosed as follows:
>
> \* \* \* \* \* \*
>
> "2. If such lien is not dependent upon possession of the personal property, it may be foreclosed in the manner provided for the foreclosure of a security interest in personal property, and the lien claimant shall be entitled to possession of the property for the purpose of foreclosure.
>
> "Such lien also may be foreclosed by action."

The 1985 Legislature amended the statute, deleting the lienholder's authority to take possession of the property:

> "*35–01–29. Foreclosure of statutory lien on personal property.* Upon default in the payment of a debt secured by a statutory lien on personal property, unless a different proce-

dure is otherwise expressly prescribed by law, such lien may be foreclosed by action as prescribed in chapter 32–20."

Utilizing the procedures of Chapter 32–20, as directed by the current statute, a lienholder may secure a warrant from the district court directing the sheriff to "seize and safely keep" the property [Section 32–20–02, N.D.C.C.], but the lienholder is not authorized to personally take possession of the property.

Because in this case a part of the equipment was repossessed before July 1, 1985, and part after that date, it might have been argued that the earlier version of Section 35–01–29 applied to the repossession of the equipment. We conclude, however, that even if the statute did apply, it does not relieve WISCO from the consequences of its conduct in this case. The statute, if applicable, authorized the lien claimant to possession for foreclosure in the manner provided for the foreclosure of a security interest in personal property. Foreclosure of a security interest in personal property is governed by Article 9 of the Uniform Commercial Code. See, e.g., Section 41–09–47, N.D.C.C. [U.C.C. § 9–501]. Thus, the lien claimant could take possession and foreclose its lien under Section

cial action to foreclose the lien and a judicial sale of the property. See Sections 35–24–14 and 35–24–18, N.D.C.C. Any attempted "repossession" based upon the lien without accounting for proceeds would violate the policy of Section 35–01–10, N.D.C.C., which prohibits contracts for forfeiture of property subject to a lien in satisfaction of the debt secured thereby.

█ We conclude that the trial court erred in holding that WISCO did not repossess the equipment. WISCO's retaking of the property upon Lindberg's request constituted a repossession pursuant to its security interest, and WISCO was obligated to comply with the requirements of Chapter 41–09, N.D.C.C., in securing and disposing of the equipment.

█ Lindberg also contends that the trial court erred in holding that he had waived his right to notice of disposition of the collateral under Section 41–09–50(3), N.D.C.C. [U.C.C. § 9–504]. Section 41–09–50(3), N.D.C.C., requires that a secured party give notice to the debtor of the time and place of sale of the collateral, unless the collateral is perishable, threatens to decline speedily in value, or is of a type customarily sold on a recognized market. The statute further provides that the debtor may waive right to notice by signing after default a statement renouncing or modifying his right to notification of sale. Section 41–09–47(3), N.D.C.C. [U.C.C. § 9–501], makes it clear that this is the only manner in which the debtor's right to notice can be waived. See also, *American State Bank of Killdeer v. Hewson*, 411 N.W.2d 57 (N.D.1987).

The trial court held that Lindberg constructively waived his right to notice of sale when he requested in writing that

WISCO remove the equipment from the wellsite.[4] We have defined "waiver" as "the voluntary and intentional relinquishment and abandonment of a known existing right, advantage, benefit, claim, or privilege." *Dangerfield v. Markel*, 252 N.W.2d 184, 191 (N.D.1977). We do not equate a statement by a debtor requesting the creditor to remove the equipment with a voluntary relinquishment of his right to notice of sale of the collateral. In so holding, we join the majority of jurisdictions which have held that voluntary surrender of the collateral does not constitute a waiver of the debtor's right to notice of sale. See e.g., *Executive Financial Services, Inc. v. Garrison*, 722 F.2d 417 (8th Cir.1983), *affirming* 535 F.Supp. 263 (W.D.Mo.1982) (applying Missouri law); *Simmons Machinery Co. v. M & M Brokerage, Inc.*, 409 So.2d 743 (Ala.1981); *Gavin v. Washington Post Employees Federal Credit Union*, 397 A.2d 968 (D.C.1979); *Rock Rapids State Bank v. Gray*, 366 N.W.2d 570 (Iowa 1985); *Union Trust Co. of Ellsworth v. Hardy*, 400 A.2d 384 (Me.1979); *O'Neil v. Mack Trucks, Inc.*, 533 S.W.2d 832 (Tex. Civ.App.1975), *rev'd on other grounds*, 542 S.W.2d 112 (Tex.1976), *mandate recalled and re-issued*, 551 S.W.2d 32 (Tex.1977); see also, 9 Anderson, Uniform Commercial Code 3d §§ 9–504:15, 9–504:37 (1985).

█ WISCO contends that its failure to give notice of sale to Lindberg did not violate the policy reasons underlying the notice requirement and should therefore be excused. WISCO claims that Lindberg had made it clear that he did not intend to redeem the equipment, that there was no need to allow Lindberg to intervene in the sale because the proceeds realized establish that the disposition was not unfair, and

35–01–29, N.D.C.C., but in doing so it was required to comply with Chapter 41–09, N.D.C.C. We therefore conclude that, even if WISCO's reacquisition of the equipment were construed as possession pursuant to its lien under the pre–1985 version of Section 35–01–29, WISCO would still be required to comply with the provisions of Chapter 41–09.

**4.** We assume this was an alternative holding for it would otherwise appear inconsistent for the trial court to reach this issue. The court had

already ruled that WISCO had not repossessed the equipment and that Chapter 41–09, N.D.C.C., therefore did not apply. See *Dakota Bank & Trust Co. of Bismarck v. Reed*, 402 N.W.2d 887 (N.D.1987). The issue of Lindberg's waiver of right to notice would therefore be irrelevant. We also note that the court declined to rule on the issue of commercial reasonableness, which also arises under Chapter 41–09, N.D.C.C. That the court decided the issue of lack of notice, but did not address commercial reasonableness, is also inconsistent.

that Lindberg would not have been able to procure other purchasers. In essence, WISCO contends that Lindberg must establish some prejudice arising from the failure to give notice. We rejected an identical argument in *Farmers State Bank of Leeds v. Thompson,* 372 N.W.2d 862 (N.D.1985). Under *Thompson,* the debtor need show only noncompliance, not loss caused by the noncompliance.

■■■ Because we conclude that Lindberg did not, as a matter of law, waive his right to notice, and because it is undisputed that WISCO did not give the required notice, upon remand Lindberg will have the benefit of a presumption that the collateral had a fair market value equal to the amount of the debt and no deficiency judgment will be allowed unless WISCO produces evidence that the fair market value was less than the outstanding debt. *Farmers State Bank of Leeds v. Thompson, supra.* We discussed the creditor's burden and the type of evidence required to rebut this presumption in *State Bank of Towner v. Hansen,* 302 N.W.2d 760, 767–768 (N.D.1981):

"If the collateral is disposed of without prior notice to the debtor, the creditor cannot obtain a deficiency judgment unless it meets its burden of overcoming the presumption that the collateral had a fair market value at least equal to the amount of the indebtedness. Upon overcoming such presumption the secured creditor will only be allowed to recover a deficiency for the lesser of: (a) the difference between the indebtedness and the fair market value of the collateral sold, or (b) the difference between the indebtedness and the actual amount received upon sale of the collateral. In this regard, the secured creditor cannot overcome the presumption by merely introducing evidence of the value received from the disposition of the collateral....

"In *Hall [v. Owen County State Bank,* 175 Ind.App. 150, 370 N.E.2d 918 (1977) ], the Indiana Court of Appeals stated:

" '... when a secured creditor disposes of collateral without proper notice un-

der IC 1971, 26–1–9–504(3), he must then prove, in his action for a deficiency judgment, that the reasonable value of the collateral at the time of the sale was less than the amount of the debt.

" 'In meeting the burden outlined above, the creditor may not merely rely on the value which he received from the repossession sale. We agree with the Arkansas Supreme Court that "it is only where the sale is conducted according to the requirements of the code that the amount received or bid at a sale of collateral is evidence of its true value in an action to recover a deficiency." *Universal C.I.T. Credit Corp. v. Rone,* (1970), 248 Ark. 665, 669, 453 S.W.2d 37, 39–40.

" 'Furthermore, the secured party may not rely solely on testimony of his credit manager or his other employees as to their opinions of the fair value of the collateral. Instead, the creditor must introduce other additional credible objective evidence of value.' 370 N.E.2d at 928.

"We agree with this reasoning of the Indiana Court of Appeals. Accordingly, in order to meet its burden in this regard, Towner must introduce credible evidence of the fair market value of the collateral other than the price received for it and other than the opinions of its own agents or employees." [Citations omitted.]

■■■ Because we have concluded that WISCO repossessed the equipment and that Chapter 41–09, N.D.C.C., controls the disposition of the collateral, the issue of commercial reasonableness of the disposition will also be presented upon remand. Lindberg contends that WISCO's lengthy retention of some of the equipment was commercially unreasonable as a matter of law. Although there may be situations where a court may determine that disposition of collateral was commercially unreasonable as a matter of law, the determination of commercial reasonableness is essentially a question of fact. *Advanced Irrigation, Inc. v. First National Bank of Fargo,* 366 N.W.2d 783 (N.D.1985). On the

record before us we cannot conclude that the disposition of collateral was commercially unreasonable as a matter of law, and we therefore leave this issue to resolution upon remand.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

ERICKSTAD, C.J., and GIERKE and MESCHKE, JJ., concur.