678 N.W.2d 757 (2004)
2004 ND 86
OLIVER-MERCER ELECTRIC COOPERATIVE, INC., Plaintiff and Appellee
v.
Richard D. DAVIS, III, Michael P. Ossanna, Joseph Hauer and Berkley Strothman, Defendants.
Richard D. Davis, III, Joseph Hauer and Berkley Strothman, Defendants and Appellants.
Oliver-Mercer Electric Cooperative, Inc., Plaintiff and Appellee,
v.
AquaConcept Technologies, Inc., Defendant and Appellant.
Nos. 20030157, 20030158.
Supreme Court of North Dakota.
April 19, 2004.
*759 Michael L. Wagner (argued), Wagner Law Firm, Bismarck, N.D., for defendants and appellants.
Gregory L. Lange (argued), Richardson, Lange & Donovan, Hazen, N.D., for plaintiff and appellee.
MARING, Justice.
[¶ 1] AquaConcept Technologies, Inc. ("AquaConcept"), Richard D. Davis, III, Joseph Hauer, and Berkley Strothman appeal a deficiency judgment granted to Oliver-Mercer Electric Cooperative ("the Cooperative") entered on April 4, 2003. Subsequently a final judgment was entered on August 22, 2003. We affirm the trial court's denial of AquaConcept's request for a jury trial. We reverse the trial court's deficiency judgment and remand the case for the trial court to make a finding of the fair market value of the collateral at the time of sale. The trial court must also make a finding of whether the Cooperative's sale of AquaConcept's collateral was commercially reasonable, taking into consideration its finding of fair market value. Finally, the trial court must decide if the Cooperative is entitled to a deficiency judgment and, if so, in what amount.
[¶ 2] On remand, the findings must be based on the record before the trial court. If it so desires, the trial court may request additional briefing or argument by the parties on the issue, or both briefing and argument by the parties on the issues.

I
[¶ 3] AquaConcept borrowed 1.8 million dollars from the Cooperative to purchase Fish N' Dakota, a fish farm. The loan was documented by a promissory note and was secured by a mortgage and security agreement. The loan was also secured by the personal guarantees of each of the four AquaConcept stockholders. AquaConcept became delinquent on the loan, and on January 20, 2000, the Cooperative took possession of the business. The Cooperative ran the business and sold AquaConcept's assets. After a period of time, it brought a deficiency and foreclosure action against AquaConcept and its personal guarantors for the unpaid portion of the debt.
[¶ 4] AquaConcept, Hauer, Davis, and Strothman requested a jury trial. At a pre-trial conference, the Cooperative moved to set aside their jury request. The trial court concluded that because all of the issues in the case related to security agreements and an action to foreclose a security agreement is an action in equity, AquaConcept was not entitled to a jury trial.
[¶ 5] After a bench trial, the trial court concluded the Cooperative was entitled to a deficiency judgment against AquaConcept and its personal guarantors. It granted the Cooperative a final deficiency judgment in the amount of $884,761.16 against AquaConcept. The trial court found the personal guarantors liable as follows: Davis, not to exceed $290,000; Ossanna, Hauer, and Strothman, not to exceed $386,667.
[¶ 6] AquaConcept, Davis, Hauer, and Strothman (hereinafter collectively referred to as "AquaConcept") appealed the deficiency judgments.

*760 II
[¶ 7] AquaConcept argues it was entitled to a jury trial because the Cooperative's complaint did not unambiguously request the equitable relief of foreclosure. Further, it argues there were many fact issues in dispute that were proper for a jury to decide. We disagree.
[¶ 8] Article 1, Section 13, of the North Dakota Constitution guarantees the right to a jury trial. However, this right does not exist in all civil cases. There is no right to a jury trial in a suit in equity absent an express constitutional or statutory provision. Gen. Elec. Credit Corp. v. Richman, 338 N.W.2d 814, 817 (N.D.1983). In an action at law, the parties are entitled to a jury trial. Id. Therefore, the distinction between law and equity remains important to determine a party's right to a jury trial. Id.
[¶ 9] "The right to a trial by jury is determined by the character of the issues as framed by the complaint or appearing on the face of the pleadings." Gen. Elec. Credit Corp., 338 N.W.2d at 817 (internal citations omitted). Courts are not bound by the pleadings, "but by the real, meritorious controversy between the parties as shown by all the pleadings in the case." Id. at 817-18.
[¶ 10] The Cooperative sought, and was granted, permission to amend its complaint to include foreclosure on the remaining collateral, which is an equitable action. AquaConcept argues its counterclaim for legal relief entitled it to a jury trial. However, "[e]ven when the counterclaim seeks monetary damages, there is no entitlement to a jury trial if the damage claim is incidental to and dependent upon a primary claim where a jury trial is not allowed." Sargent County Bank v. Wentworth, 547 N.W.2d 753, 761 (N.D.1996). We conclude, based on the pleadings and order granting an amendment to the complaint in this case, AquaConcept was not entitled to a jury trial because the character of the issues in this case were essentially equitable.

III
[¶ 11] Generally, a deficiency judgment is "[a] judgment against a debtor for the unpaid balance of the debt if a foreclosure sale or a sale of repossessed personal property fails to yield the full amount of the debt due." Black's Law Dictionary 846 (7th ed.1999). If the secured creditor disposes of the collateral in a commercially reasonable manner and complies with the provisions of the commercial code, it is entitled to a deficiency judgment of the difference between the debt and the amount received from the sale of the collateral. State Bank of Towner v. Hansen, 302 N.W.2d 760, 768 (N.D.1981). If the secured creditor does not dispose of the collateral in a commercially reasonable manner or fails to give notice of the sale, it is presumed that the fair market value of the collateral is equal to the debt. Id. If the secured creditor meets its burden of proving that the fair market value of the collateral is less than the debt, "the secured creditor is entitled to a deficiency judgment for the lesser of: (a) the difference between the indebtedness and the fair market value of the collateral sold, or (b) the difference between the indebtedness and the amount received upon disposition of the collateral." Id.; see also N.D.C.C. § 41-09-50(1) (setting forth the expenses the secured party may deduct from the proceeds).
[¶ 12] Section 41-09-50(3), N.D.C.C., states:
Disposition of the collateral may be by public or private proceedings and may be made by the way of one or more contracts. Sale or other disposition may *761 be as a unit or in parcels and at any time and place and on any terms, but every aspect of the disposition, including the method, manner, time, place, and terms must be commercially reasonable.... reasonable notice of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale.
Therefore, under N.D.C.C. § 41-09-50(3),[1] a secured creditor has two obligations in order to recover a deficiency judgment. It must give reasonable notification of the time and place of a sale of collateral, and it must conduct the sale in a commercially reasonable manner. If the secured party complies with these obligations, it may seek a deficiency judgment for the amount of the debt remaining unpaid. N.D.C.C. § 41-09-50(2). The requirements of notice and commercial reasonableness are separate and distinct obligations. American State Bank of Killdeer v. Hewson, 411 N.W.2d 57, 63 (N.D.1987). A secured party who complies with the notice provisions of the code may still be barred from obtaining a deficiency judgment if the sale was commercially unreasonable. Id.
[¶ 13] In this case, AquaConcept argues the Cooperative failed to satisfy both the obligation to give it proper notice of the sale of its collateral and the obligation to dispose of the collateral in a commercially reasonable manner, and it is not entitled to a deficiency judgment.

A
[¶ 14] In State Bank of Burleigh County Trust Co. v. All-American Sub, Inc., our Court held that when a secured creditor, who failed to give proper notice, seeks a deficiency judgment, it will be presumed the fair market value of the collateral is equal to the debt. 289 N.W.2d 772, 779-80 (N.D.1980). Under N.D.R.Ev. 301, a presumption in a civil case:
substitutes for evidence of the existence of the fact presumed until the trier of fact finds credible evidence that the fact presumed does not exist, in which event the presumption is rebutted and fails to operate. A party against whom a presumption is directed has the burden of proving that the nonexistence of the presumed facts is more probable than its existence.
This rule of evidence "operates to shift the original burden of proof to the opponent of the presumption." In re Luken, 551 N.W.2d 794, 797 (N.D.1996) (quoting Land Office Co. v. Clapp-Thomssen Co., 442 N.W.2d 401, 406 (N.D.1989)).
[¶ 15] Thus, failure to give notice shifts the burden to the secured creditor to prove by a preponderance of the evidence that the fair market value of the collateral is less than the debt in order to be entitled to a deficiency judgment. Id.; see also N.D.R.Ev. 301; All-American Sub, Inc., 289 N.W.2d at 779-80. Therefore, a finding regarding the fair market value of collateral is essential to determining entitlement to any deficiency.
[¶ 16] All parties agree that the Cooperative failed to properly notify AquaConcept *762 of the sale of its collateral; therefore, the presumption that the fair market value is equal to the debt applies. A trial court must determine the fair market value of the collateral from credible evidence other than the foreclosure sale proceeds. Lindberg v. Williston Indus. Supply Corp., 411 N.W.2d 368, 374 (N.D.1987). In this case, the trial court, however, concluded that "the sale of all residual personal property and prior sales of [AquaConcept] assets, appear to have a fair market value less than the debt against it." AquaConcept argues the trial court erred when it granted the Cooperative a deficiency judgment because the trial court failed to find that the Cooperative overcame the presumption with evidence of the fair market value aside from the amount of the sales. We agree, and we must remand this case for the trial court to determine the fair market value of the collateral.

B
[¶ 17] AquaConcept argues the time to determine the fair market value of collateral is the date of repossession and cites Georgia cases for this proposition. See Enter. Fin. Corp. v. Georgia Nut & Bolt Co., 212 Ga.App. 459, 441 S.E.2d 908 (1994); Granite Equip. Leasing Corp. v. Marine Dev. Corp., 139 Ga.App. 778, 230 S.E.2d 43 (1976); Ace Parts & Distributors, Inc. v. First Nat'l Bank of Atlanta, 146 Ga.App. 4, 245 S.E.2d 314 (1978); Barker v. Horn, 245 Ark. 315, 432 S.W.2d 21 (1968).
[¶ 18] This is an issue of first impression in relation to our pre-2001 Article 9 statutes. The few courts that have directly addressed this issue are split, and many courts have not addressed the issue. Some courts hold that the fair market value must be determined at the time of repossession. See, e.g., First Florida Bank v. Howard, 604 So.2d 1286 (Fla.Dist. Ct.App.1992); Butte County Bank v. Hobley, 109 Idaho 402, 707 P.2d 513 (App. 1985); Kobuk Eng'g & Contracting Servs., Inc. v. Superior Tank & Constr. Co-Alaska, Inc., 568 P.2d 1007 (Alaska 1977); A.A. Store Fixture Co. v. Kouzoukas, 87 Ill.App.3d 631, 43 Ill.Dec. 131, 410 N.E.2d 131 (1980). Other courts hold that the fair market value must be determined at the time of the sale. See, e.g., FDIC v. Tempest Fugat, H.L.I., Inc., 75 Or.App. 536, 707 P.2d 81 (1985); Life Investors Ins. Co. of America v. Horizon Res. Bethany, Ltd., 182 Ariz. 529, 898 P.2d 478 (App.1995).
[¶ 19] We conclude our case law favors the second line of cases holding that the fair market value must be determined at the time of the sale. In All-American Sub, Inc., 289 N.W.2d at 779-80, we adopted the presumption that when a creditor fails to properly notify the debtor of a sale of collateral, the fair market value is equal to the debt. Id. We adopted this presumption citing Levers v. Rio King Land & Inv. Co., 93 Nev. 95, 560 P.2d 917 (1977); United States v. Whitehouse Plastics, 501 F.2d 692 (5th Cir.1974); Conti Causeway Ford v. Jarossy, 114 N.J.Super. 382, 276 A.2d 402 (Ocean County Ct.1971); Universal C.I.T. Credit Co. v. Rone, 248 Ark. 665, 453 S.W.2d 37 (1970).
[¶ 20] The cases we cited in All-American Sub, Inc. indicate the time to determine the fair market value is the date of sale. See Levers, 560 P.2d at 920 (stating that "when a creditor is derelict in complying with the code's provisions, it will be presumed the collateral had a fair market value equal to the amount of the debt, and no deficiency will be permitted unless the creditor produces evidence to establish the reasonable amount that the collateral would have sold for at a proper sale") (emphasis added); Whitehouse Plastics, 501 F.2d at 697 (stating that the "jury was entitled to reject Baker's assessment as *763 not probative of the fair value of the property at the time and place of sale .... And having so found, the jury was entitled to infer that the total amount received at the sale was evidentiary of the fair value of the goods.") (emphasis added); Universal C.I.T. Credit Co., 453 S.W.2d at 39 (stating that "in determining entitlement to deficiency judgment under such circumstances, the debt is to be credited with the amount that reasonably should have been obtained through a sale conducted according to law, rather than the actual sale price") (emphasis added).[2]
[¶ 21] We find further support in Lindberg, 411 N.W.2d 368 and Hansen, 302 N.W.2d 760. Although in Lindberg and Hansen the proper time to determine the fair market value of collateral was not at issue, we stated in each that "when a secured creditor disposes of collateral without proper notice ..., he must then prove, in his action for a deficiency judgment, that the reasonable value of the collateral at the time of the sale was less than the amount of the debt." Lindberg, 411 N.W.2d at 374 (quoting Hall v. Owen County State Bank, 175 Ind.App. 150, 370 N.E.2d 918, 928 (1977)) (emphasis added); Hansen, 302 N.W.2d at 767 (same).
[¶ 22] Therefore, we conclude the proper time to determine the fair market value for purposes of entitlement to a deficiency judgment is the time of sale.

C
[¶ 23] When a sale is conducted according to the requirements of Article 9, the amount received at a sale of collateral is evidence of the fair market value. Lindberg, 411 N.W.2d at 374 (quoting Hall, 370 N.E.2d at 928). However, when a sale is not conducted according to the requirements of Article 9, a secured creditor may not rely on the value which he received from the sale of collateral. Id. Additionally, the secured creditor may not rely on the testimony of his credit manager or other employees as to their opinions of the fair market value. Id. In this case, the Cooperative failed to notify AquaConcept of the sale of its collateral. Therefore, the amount received at the sales of AquaConcept's collateral is not evidence of the fair market value.
[¶ 24] We have not previously discussed what kind of evidence is "credible evidence" under N.D.R.Ev. 301 to rebut the presumption that the fair market value of the collateral is equal to the debt. A secured creditor may prove the fair market value of collateral in a number of ways. For example, appraisals, stipulations, market conditions, subsequent sales, and testimony of the purchaser are all proper evidence from which a trial court can determine the fair market value of collateral. Kathryn Page Seebart, A Secured Party's Right to a Deficiency Judgment After Noncompliance with the Resale Provisions of Article 9, 60 N.D. L.Rev. 531 (1984).
[¶ 25] On remand, the trial court must determine whether the Cooperative overcame the presumption with credible evidence in the record from which it can determine the fair market value of the collateral at the time of sale. If the record does not contain credible evidence allowing the trial court to make a finding as to the fair market value at the time of the sale, the Cooperative is not entitled to a deficiency judgment. All-American Sub, Inc., 289 N.W.2d at 779-80. Without proof of the fair market value at the time of the *764 sale, the Cooperative will not have satisfied its burden to rebut the presumption that the fair market value of AquaConcept's collateral is less than the debt.

D
[¶ 26] In addition, AquaConcept challenges the commercial reasonableness of the sale of its collateral. However, if the trial court finds the Cooperative failed to prove that the fair market value of the collateral is less than the debt and, therefore, fails to rebut the presumption, the trial court need not reach the issue of commercial reasonableness of the sales because the Cooperative is not entitled to a deficiency.
[¶ 27] Under the second obligation of N.D.C.C. § 41-09-50(3), the secured party has the burden to prove every aspect of the sale was commercially reasonable, including the method, manner, time, place, and terms. N.D.C.C. § 41-09-50(3); In re Estate of Sagmiller, 2000 ND 151, ¶ 5, 615 N.W.2d 567. Any secured creditor, whether one who gave proper notice or one who did not give proper notice, may be barred from obtaining a deficiency judgment if the sale of the collateral was commercially unreasonable. Hewson, 411 N.W.2d at 65 (VandeWalle, J., concurring in result). "Once the secured party makes a prima facie case indicating the collateral was sold in a commercially reasonable manner, the burden of persuasion, not the burden of proof, shifts to the debtor to elicit specific evidence of commercial unreasonableness." Sagmiller, 2000 ND 151, ¶ 5, 615 N.W.2d 567. Commercial reasonableness is a question of fact that we review under the clearly erroneous standard. Advanced Irrigation, Inc. v. First Nat'l Bank of Fargo, 366 N.W.2d 783, 786 (N.D.1985).
[¶ 28] The fair market value as compared to the price obtained, although not the sole determinative factor, is one of the relevant factors to determine if a sale of collateral was commercially reasonable. See Levers, 560 P.2d at 920; Sagmiller, 2000 ND 151, ¶ 8, 615 N.W.2d 567. In the event the trial court finds on remand the Cooperative rebutted the presumption and proved the fair market value of the collateral at the time of the sale was less than the debt, the issue of whether the Cooperative disposed of AquaConcept's collateral in a commercially reasonable manner must also be addressed on remand because the fair market value finding may impact the commercial reasonableness of the sale.

IV
[¶ 29] We affirm the trial court's denial of AquaConcept's request for a jury trial. However, we reverse the trial court's deficiency judgment and remand the case for the trial court to make a finding whether the Cooperative rebutted the presumption and met its burden to prove by a preponderance of the evidence that the fair market value of AquaConcept's collateral was less than the debt on the date of the sale and for further proceedings consistent with this opinion.
[¶ 30] GERALD W. VANDE WALLE, C.J., WILLIAM F. HODNY, S.J., EVERETT NELS OLSON, S.J., and WILLIAM A. NEUMANN, JJ., concur.
[¶ 31] The Honorable WILLIAM F. HODNY, S.J., and the Honorable EVERETT NELS OLSON, S.J., sitting in place of KAPSNER, J., and SANDSTROM, J., disqualified.
NOTES
[1] In 2001, the legislature repealed N.D.C.C. ch. 41-09 and created and enacted N.D.C.C. ch. 41-09, with an effective date of July 1, 2001. Under N.D.C.C. § 41-09-124(3), the revisions do not affect any "action, case, or proceeding commenced before July 1, 2001." The complaint in this case was filed before July 1, 2001, and therefore, pre-2001 Article 9 provisions govern. The substance of N.D.C.C. § 41-09-50(3) was created and enacted at N.D.C.C. §§ 41-09-107 through 110.
[2] In Conti Causeway Ford, 276 A.2d at 403, the parties agreed to the fair market value of the collateral, they disagreed as to the result of failing to follow the requirements of Article 9.